UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>      Plaintiff,<br><br>   v.<br><br>CHANCE GORDON, et al.,<br><br>      Defendants. | No. CV 12-6147 RSWL (MRWx)<br><br>PRELIMINARY INJUNCTION |

      In a November 16, 2012 Minute Order, the Court concluded that plaintiff Consumer

Financial Protection Bureau ("CFPB" or "Bureau"), was entitled to a Preliminary Injunction

in the action it commenced pursuant to:  (1) Sections 1031(a), 1036(a), 1054, and 1055 of

the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a),

5564, and 5565; and (2) Section 626 of the Omnibus Appropriations Act, 2009, as amended

by Section 1097 of the CFPA, 12 U.S.C. § 5538, and the Mortgage Assistance Relief

Services Rule, 16 C.F.R. Part 322, recodified as 12 C.F.R. Part 1015 ("Regulation O").  The

Court's conclusion that the issuance of a Preliminary Injunction is warranted followed the

Court's entry of a Temporary Restraining Order ("TRO"), asset freeze, and appointment of a

temporary receiver on July 18, 2012.  Consistent with the Court's November 16, 2012

Minute Order, the Court issues the following Preliminary Injunction:

1. This Court has jurisdiction over the subject matter of this case and over all the
parties hereto, and venue in this district is proper;

2. There is good cause to believe that Defendants (a) Chance Edward Gordon
("Gordon"), an individual also d/b/a Gordon & Associates, The Law Offices of Chance E.
Gordon, The Law Offices of C. Edward Gordon, The C.E.G. Law Firm, National Legal
Source, Resource Law Center, Resource Law Group, and Resource Legal Group; (b) The
Gordon Law Firm P.C., a California professional corporation; (c) Abraham Michael Pessar
("Pessar"), an individual; (d) Division One Investment and Loan, Inc., d/b/a Division One
Business Solutions, D1 Companies, Division One, Division 1, Home Savers National, D1
Marketing Solutions and Relief Council ("Division One Investment"), a corporation; and (e)
Processing Division, L.L.C., a limited liability company, and also d/b/a Qualification Intake
Department, Division One, The Relief Network, and Relief Network (collectively
"Defendants"), have engaged and are likely to continue to engage in acts or practices that
violate section 1036 of the CFPA, 12 U.S.C. § 5536, and Regulation O, 12 C.F.R. Part 1015,
and that the Bureau is therefore likely to prevail on the merits of this action;

3. There is good cause to believe that immediate and irreparable damage to the
Court's ability to grant effective final relief for consumers in the form of monetary
restitution and disgorgement or compensation for unjust enrichment will occur from the
transfer, dissipation, or concealment by Defendants of their assets or business records unless
Defendants continue to be restrained and enjoined by Order of this Court;

4. Good cause existed for appointing a temporary receiver over The Gordon Law
Firm P.C., Division One Investment and Loan, Inc., and Processing Division, L.L.C.
("Receivership Defendants") and permitting the Bureau access to Defendants' business
premises at the discretion of the Receiver.  The Court now concludes that the receivership
should be wound-down consistent with the terms of this Preliminary Injunction.

5.     Good cause exists to continue an asset freeze and the other equitable relief ordered herein;

6.     Weighing the equities and considering the Bureau's likelihood of ultimate success on the merits and the likelihood of irreparable harm in the absence of preliminary relief, the balance of hardships favors the Bureau, and a Preliminary Injunction with an asset freeze and other equitable relief is in the public interest; and

7.     No security is required of any agency of the United States for issuance of a restraining order.  Fed. R. Civ. P. 65.

## ORDER

## DEFINITIONS

For the Purposes of this Order, the following definitions shall apply:

1.     "Assets" means any legal or equitable interest in, right to or claim to any real, personal, or intellectual property owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by any Defendant, wherever located, whether in the United States or abroad, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, cash, and trusts, including but not limited to any trust held for the benefit of any Defendant, any of the Individual Defendants' minor children, or any of the Individual Defendants' spouses, and shall include both existing Assets and Assets acquired after the date of entry of this Order;

2.     "Corporate Defendants" means The Gordon Law Firm P.C., Division One Investment and Loan, Inc., and Processing Division, L.L.C.,  individually, collectively, or in any combination, and each of them by whatever names each might be known;

3.     "Defendants" means the Individual Defendants and all of the Corporate Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known.

4.      "Document" and "Electronically Stored Information" are synonymous in meaning and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules of Civil Procedure and include but are not limited to:

i.      The original or a true copy of any written, typed, printed, electronically stored, transcribed, taped, recorded, filmed, punched, or graphic matter or other data compilations of any kind, including, but not limited to, letters, email or other correspondence, messages, memoranda, paper, interoffice communications, notes, reports, summaries, manuals, magnetic tapes or discs, tabulations, books, records, checks, invoices, work papers, journals, ledgers, statements, returns, reports, schedules, files, charts, logs, electronic files, stored in any medium; and

ii.     Any electronically created or stored information, including but not limited to electronic mail, instant messaging, videoconferencing, SMS, MMS, or other text messaging, and other electronic correspondence (whether active, archived, unsent, or in a deleted items folder), word processing files, spreadsheets, databases, unorganized data, document metadata, presentation files, and sound recordings, whether stored on any cell phones, smartphones, flash drives, personal digital assistants ("PDAs"), cards, desktop personal computer and workstations, laptops, notebooks and other portable computers, or other electronic storage media, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether assigned to individuals or in pools of computers available for shared use, or personally owned but used for work-related purposes, whether stored on-site with the computer used to generate them, stored offsite in another company facility, or stored, hosted, or otherwise maintained off-site by a third party; and computers and related offline storage used by Defendants or  Defendants'

1  participating associates, which may include persons who are not

2  employees of the company or who do not work on company premises.

3      5.    "Electronic Data Host" means any person or entity that stores, hosts, or

4  otherwise maintains electronically stored information.

5      6.    "Financial institution" means any bank, savings and loan institution, credit

6  union, or any financial depository of any kind, including, but not limited to, any brokerage

7  house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or

8  precious metal dealer.

9      7.    "Individual Defendants" means Chance Edward Gordon and Abraham

10  Michael Pessar, individually, collectively, or in any combination, and each of them by any

11  other names by which they might be known.

12      8.    "Material fact" means any fact that is likely to affect a person's choice of, or

13  conduct regarding, goods or services.

14      9.    "Mortgage assistance relief product or service" means any product, service,

15  plan, or program, offered or provided to the consumer in exchange for consideration, that is

16  represented, expressly or by implication, to assist or attempt to assist the consumer with any

17  of the following:

18      i.    stopping, preventing, or postponing any mortgage or deed of trust

19  foreclosure sale for the consumer's dwelling, any repossession of the

20  consumer's dwelling, or otherwise saving the consumer's dwelling

21  from foreclosure or repossession;

22      ii.    negotiating, obtaining, or arranging a modification of any term of

23  dwelling loan, including a reduction in the amount of interest, principal

24  balance, monthly payments, or fees;

25      iii.    obtaining any forbearance or modification in the timing of payments

26  from any dwelling loan holder or servicer on any dwelling loan;

27      iv.    negotiating, obtaining, or arranging any extension of the period of time

28  within which the consumer may (i) cure his or her default on a dwelling

1   loan, (ii) reinstate his or her dwelling loan, (iii) redeem a dwelling, or

2   (iv) exercise any right to reinstate a dwelling loan or redeem a dwelling;

3   v.   obtaining any waiver of an acceleration clause or balloon payment

4   contained in any promissory note or contract secured by any dwelling;

5   or

6   vi.   negotiating, obtaining, or arranging (i) a short sale of a dwelling, (ii) a

7   deed in lieu of foreclosure, (iii) or any other disposition of a dwelling

8   loan other than a sale to a third party that is not the dwelling loan

9   holder.

10   The foregoing shall include any manner of claimed assistance, including, but

11   not limited to, auditing or examining a consumer's mortgage or home loan

12   application.

13   10.   "Person" means an individual, partnership, company, corporation, association

14   (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

15   11.   "Receivership Assets" means and includes any Asset of any Receivership

16   Defendant, as defined above, including both existing Assets and Assets acquired after the

17   date of entry of this Order, and includes any Assets held by a third party, whether a party to

18   the above-referenced action or not.

19   12.   "Receivership Estate" means and includes the estate of the Receivership

20   Defendants created by this Order, and as may be modified or expanded by subsequent orders

21   of this Court, including but not limited to all Receivership Assets as defined herein,

22   regardless of whether such Receivership Assets are held by any Defendant or Individual

23   Defendant, or third party not presently a party to the above-referenced action.

24   13.   "Receivership Defendants" means The Gordon Law Firm P.C., Division One

25   Investment and Loan, Inc., and Processing Division, L.L.C., and their successors, assigns,

26   affiliates, or subsidiaries, individually, collectively, or in any combination, and each of them

27   by whatever names each might be known, provided that the Receiver has reason to believe

28   they are owned or controlled in whole or in part by any of the Defendants.

14.   "Receiver" or "Temporary Receiver" shall mean Robb Evans and Associates.

15.   The words "and" and "or" shall be understood to have both conjunctive and disjunctive meanings as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

## I.

## PROHIBITED REPRESENTATIONS

IT IS THEREFORE ORDERED that Defendants and their successors, assigns, officers, agents, servants, employees, independent contractors and attorneys, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief product or service, are hereby restrained and enjoined from falsely representing, or from assisting others who are falsely representing, expressly or by implication, any of the following:

A.   That any Defendant or any other person:

    1.   will or likely will obtain for consumers mortgage loan modifications that substantially reduce consumers' mortgage payments or interest rates or  help consumers avoid foreclosure;

    2.   as a result of a forensic loan audit, will or likely will obtain mortgage loan modifications for consumers that substantially reduce consumers' mortgage payments or interest rates; and

    3.   is the United States government or is affiliated with, endorsed or approved by, or otherwise associated with the United States government.

B.   The degree of success that any Defendant or any other person has had in performing any mortgage assistance relief service;

C.    The nature of any Defendant's or any other person's relationship with any mortgage loan holder or servicer, or other secured or unsecured lender;

D.    The amount of time it will take or is likely to take to obtain or arrange a renegotiation, settlement, modification, or other alteration of the terms of any secured or unsecured debt, including but not limited to the modifications of any term of a consumer's home loan, deed of trust, or mortgage, including any recapitalization or reinstatement agreement; or

E.    The cost of any Defendants' service including that there will be no charge for all or a portion of such service.

## II.

## DISCLOSURES REQUIRED BY AND REPRESENTATIONS PROHIBITED BY REGULATION O

IT IS FURTHER ORDERED that Defendants and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any good or service, are hereby restrained and enjoined from engaging in, or assisting others in engaging in, the following conduct:

A.    Representing, expressly or by implication, that a consumer cannot or should not contact or communicate with his or her lender or servicer, in violation of 12 C.F.R. § 1015.3(a);

B.    Failing to make the following disclosure clearly and prominently in all general and consumer-specific commercial communications: "[Name of Company] is not associated with the government, and our service is not approved by the government or your  lender," in violation of 12 C.F.R. §§ l015.4(a)(1), 1015.4(b)(2);

C.   Failing to make the following disclosure clearly and prominently in all general and consumer-specific commercial communications: "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of 12 C.F.R. §§ 1015.4(a)(2), 1015.4(b)(3);

D.   Failing to make the following disclosure clearly and prominently in all consumer-specific commercial communications: "You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services."  For the purposes of this section, the amount "you will have to pay" shall consist of the total amount  the consumer must pay to purchase, receive, and use all of the mortgage assistance relief services that are the subject of the sales offer, including but not limited to, all fees and charges, in violation of 12 C.F.R. § 1015.4(b)(1);

E.   Failing, in all general commercial communications, consumer-specific commercial communications, and other communications in cases where any Defendant or person has represented, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that the consumer should temporarily or permanently discontinue payments, in whole or in part, on a dwelling loan, to place clearly and prominently, and in close proximity to any such representation the following disclosure:  "If you stop paying your mortgage, you could lose your home and damage your credit rating," in violation of 12 C.F.R. § 1015.4(c); and

F.   Any other conduct in violation of 12 C.F.R. § 1015 et seq.

## III.

## PROHIBITION ON COLLECTION OF ADVANCE FEES

IT IS FURTHER ORDERED that  Defendants and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, are hereby restrained and enjoined from asking for or receiving payment before consumers have executed a written agreement between the consumer and the loan holder or servicer that incorporates the offer obtained by Defendants.

## IV.

## PRESERVATION OF RECORDS AND TANGIBLE THINGS

IT IS FURTHER ORDERED that Defendants and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device, are hereby enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents or records that relate to the business practices, or business or personal finances of any Defendant, or other entity directly or indirectly under the control of any Defendant.

## V.

## DISABLEMENT OF WEBSITES

IT IS FURTHER ORDERED that Defendants and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and those persons in active concert or participation with any of them who receive actual notice of this Order by

personal service, facsimile transmission, email, or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device, shall:

A.  Immediately do whatever is necessary to ensure that any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, including but not limited to www.reliefcouncil.org, www.thereliefnetwork.org, www.prelitlaw.com, www.resourcelawgroup.com, www.resourcelawcenter.com, www.resourcelegalgroup.com, and www.nationallegalsource.com, containing statements, representations, or omissions prohibited by Sections I and II of this Order cannot be accessed by the public;

B.  Prevent the destruction or erasure of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, by preserving such website in the format in which it is maintained currently; and

C.  Immediately notify in writing counsel for the Bureau of any other Internet website operated or controlled by any Defendant not listed in Subsections V.A. above.

**VI.**

**SUSPENSION OF INTERNET DOMAIN NAME REGISTRATIONS**

IT IS FURTHER ORDERED that Defendants and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device, shall suspend the registration of any internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, and containing statements, representations, or omissions prohibited by Sections I and II of

this Order, including, but not limited to www.reliefcouncil.org, www.thereliefnetwork.org, www.prelitlaw.com, www.resourcelawgroup.com, www.resourcelawcenter.com, www.resourcelegalgroup.com, and www.nationallegalsource.com, and provide immediate notice to counsel for the Bureau of any other Internet domain names registered or controlled by any Defendants.

**VII.**

**ASSET FREEZE**

IT IS FURTHER ORDERED that except as specified below, Defendants and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and all persons directly or indirectly under the control of any of them, including any financial institution, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile, email, or otherwise, are hereby restrained and enjoined from directly or indirectly:

    A.    Selling, liquidating, assigning, transferring, converting, loaning, hypothecating, disbursing, gifting, conveying, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any Asset that is:

        1.    in the actual or constructive possession of any Defendant; or

        2.    in the actual or constructive possession of, or owned or controlled by, or subject to access by, or belonging to, any corporation, partnership, trust or other entity directly or indirectly owned, managed or controlled by any Defendant;

    B.    Opening, or causing to be opened, any safe deposit box, commercial mail box, or storage facility belonging to, for the use or benefit of, controlled by, or titled in the name of any Defendant, or subject to access by any Defendant;

    C.    Incurring charges or cash advances on any credit card, stored value card, debit card or charge card issued in the name, singly or jointly, of any Defendant or

any other entity directly or indirectly owned, managed, or controlled by any Defendant;

D.    Obtaining a personal or secured loan; or

E.    Cashing any checks from consumers, clients, or customers of any Defendant.

IT IS FURTHER ORDERED that except as specified below, the Assets affected by this Section shall include:  (a) all Assets of each Defendant as of the time this Order is entered, and (b) those Assets obtained or received after entry of this Order that are derived, directly or indirectly, from the actions alleged in the CFPB's Complaint.  This Section does not prohibit transfers to the Temporary Receiver or to the Court's registry, nor does it prohibit the Repatriation of Foreign Assets, as specifically required in Section X of this Order.

Provided however, that upon entry of this Order, the freeze of the following accounts shall be dissolved and no longer subject to the provisions of the Asset Freeze:

1.    Account in the name of Division One Investment and Loan, Inc. at Wells Fargo, Account Number xxxxxx5971;

2    Account in the name of Division One Investment and Loan, Inc. at Wells Fargo, Account Number xxxxxx9816;

3.    Account in the name of Division One Investment and Loan, Inc. at Wells Fargo, Account Number xxxxxx0768; and

4.    Account in the name of Division One Investment and Loan, Inc. at Wells Fargo, Account Number xxxxxx1335.

The CFPB and Pessar agree that no further funds will be released for any purpose, including living expenses or attorneys' fees, while this Preliminary Injunction is in place. IT IS FURTHER ORDERED that upon entry of this Order, the Receiver shall release Pessar's personal Sony computer to him.

Also provided however, that Gordon may dissipate a maximum of $2,500 per month for necessary and reasonable living expenses from whatever income Gordon received after

entry of the TRO, or may obtain after the entry of this Preliminary Injunction, that is not derived, directly or indirectly, from the actions alleged in the CFPB's Complaint.

## VIII.

## RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

IT IS FURTHER ORDERED that, except as otherwise ordered by this Court, any financial or brokerage institution, business entity, electronic data host, Internet or "e-currency" payment processor, or person served with a copy of this Order, or who otherwise has actual or constructive knowledge of this Order, that holds, controls, or maintains custody of any account, Document, or Asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to Section VII above, or has held, controlled, or maintained any such account, Document, or Asset at any time since January 1, 2010, shall:

    A.    Hold, preserve, and retain within such person's control, and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of such account, Document, or Asset held by or under such person's control, except as directed by further order of the Court or as directed in writing by the Temporary Receiver regarding accounts, Documents, or Assets held in the name of or benefit of any Receivership Defendant;

    B.    Provide the Receiver, the Receiver's agents, the Bureau, and the Bureau's agents immediate access to Documents, including those electronically stored, hosted, or otherwise maintained on behalf of Defendants for forensic imaging or copying;

    C.    Deny access to any safe deposit box, commercial mail box, or storage facility belonging to, for the use or benefit of, controlled by, or titled in the name of

any Defendant, or subject to access by any Defendant or other party subject to Section VII (Asset Freeze) above;

D.    Provide to counsel for the Bureau and the Receiver, within fourteen (14) days, a sworn statement setting forth:

    1.    Information sufficient to identify each account or Asset titled in the name, individually or jointly, or held on behalf of or for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to Section VII above, whether in whole or in part;

    2.    the balance of each such account, or a description of the nature and value of such Asset, as of the close of business on the day on which this Order is served;

    3.    the identification of any safe deposit box, commercial mail box, or storage facility belonging to, for the use or benefit of, controlled by, or titled in the name of any Defendant, or subject to access by any Defendant or other party subject to Section VII above, whether in whole or in part; and

    4.    if the account, safe deposit box, or other Asset has been closed or removed, the date closed or removed, the balance on said date, and the name or the person or entity to whom such account or other Asset was remitted;

E.    Provide to counsel for the Bureau and the Receiver, within twenty-one days after being served with a request, copies of all Documents pertaining to such account or Asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit

box logs; provided that such institution or custodian may charge a reasonable fee; and

IT IS FURTHER ORDERED that the accounts subject to this provision include: (a) all Assets of each Defendant deposited as of the time this Order is entered, and (b) those Assets deposited after entry of this Order that are derived from the actions alleged in the CFPB's Complaint. This Section does not prohibit transfers to the Temporary Receiver or to the Court's registry, nor does it prohibit the Repatriation of Foreign Assets, as specifically required in Section X of this Order.

IT IS FURTHER ORDERED that the Bureau is granted leave, pursuant to Fed. R. Civ. P. 45, to subpoena Documents immediately from any financial or brokerage institution, business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, Document, or Asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to Section VII above, or has held, controlled, or maintained any such account, Document, or Asset at any time since January 1, 2010, and such financial or brokerage institution, business entity, electronic data host or person shall respond to such subpoena within the time required by law after service.

## IX.

## CONSUMER CREDIT REPORTS

IT IS FURTHER ORDERED that pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), the Bureau may obtain credit reports concerning any Defendant, and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the Bureau.

## X.

## REPATRIATION OF FOREIGN ASSETS

IT IS FURTHER ORDERED that, within thirty days following the service of this Order, each Defendant shall:

A.    Provide counsel for the Bureau and the Receiver with a full accounting of all Assets, accounts, and Documents outside of the territory of the United States that are held either: (1) by Defendants; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly;

B.    Transfer to the territory of the United States all Assets, accounts, and Documents in foreign countries held either: (1) by Defendants; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly; and

C.    Provide the Bureau access to all records of accounts or Assets of the Corporate Defendants and Individual Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order as Attachment C.

IT IS FURTHER ORDERED that all repatriated Assets, accounts, and Documents are subject to Section VII of this Order.

## XI.

### NONINTERFERENCE WITH REPATRIATION

IT IS FURTHER ORDERED that Defendants and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by the preceding Section X of this Order, including, but not limited to:

A.    Sending any statement, letter, fax, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has

occurred under the terms of a foreign trust agreement until such time that all

Assets have been fully repatriated pursuant to Section X of this Order; or

B.     Notifying any trustee, protector, or other agent of any foreign trust or other

related entities of either the existence of this Order, or of the fact that

repatriation is required pursuant to a court order, until such time that all Assets

have been fully repatriated pursuant to Section X of this Order.

# XII.

# RECEIVERSHIP PROVISIONS

IT IS FURTHER ORDERED that Robb Evans & Associates LLC, 11450 Sheldon

Street, Sun Valley, CA 91352-1121, shall continue as Temporary Receiver ("Temporary

Receiver") to wind down the affairs and marshal the records and assets of the Receivership

Defendants.  The Temporary Receiver shall be the agent of this Court and solely the agent of

this Court in acting as Temporary Receiver under this Order.  The Temporary Receiver shall

be accountable directly to this Court.  The Temporary Receiver shall comply with all laws

and Local Rules of this Court governing federal equity receivers, including but not limited to

Local Rules 66-1 through 66-5.1 and Local Rule 66-8, and is authorized and directed to:

A.     Take any and all steps that the Temporary Receiver concludes are appropriate

to wind down the Receivership Defendants.

B.     Continue to exercise full control over the Receivership Defendants and

continue to collect, marshal, and take custody, control, and possession of all

the funds, property, premises, accounts, documents, mail, and other assets of,

or in the possession or under the control of the Receivership Defendants,

wherever situated, the income and profits therefrom, and all sums of money

now or hereafter due or owing to the Receivership Defendants, with full power

to collect, receive, and take possession of all goods, chattels, rights, credits,

monies, effects, lands leases, books and records, limited partnership records,

work papers, and records of accounts, including computer-maintained

information, contracts, financial records, monies on hand in banks and other

financial institutions, and other papers and documents of other individuals,
partnerships, or corporations whose interest are now held by or under the
direction, possession, custody, or control of the Receivership Defendants
("Receivership Estate");

C.     Continue to have full control over the management and personnel of the
Receivership Defendants, including the authority to remove, as the Temporary
Receiver deems necessary or advisable, any director, officer independent
contractor, employee, or agent of the Receivership Defendants from control of,
management of, or participation in the affairs of the Receivership Defendants.

D.     Make payments and disbursements from the Receivership Estate that are
necessary or advisable for carrying out the directions of, or exercising the
authority granted by, this Order.  The Temporary Receiver shall apply to the
Court for prior approval of any payment of any debt or obligation incurred by
the Receivership Defendant prior to the date of entry of the temporary
restraining order in this action, except payments that the Temporary Receiver
deems necessary or advisable to secure and liquidate assets of the
Receivership Defendant, such as rental payments or payment of liens;

E.     Continue to perform all acts necessary or advisable to prevent unauthorized
transfer, withdrawal, or misapplication of Receivership Assets;

F.     Continue to maintain accurate records of all receipts and expenditures made as
Temporary Receiver;

G.     Continue to defend, compromise, adjust, or otherwise dispose of any or all
actions or proceedings instituted in the past or in the future against the
Temporary Receiver in its role as Temporary Receiver, or against the
Receivership Defendant, as the Temporary Receiver deems necessary and
advisable to carry out the Temporary Receiver's mandate under this Order;

H.   Continue to maintain bank accounts created as designated depositories for funds of the Receivership Defendant, and make all payments and disbursements from the Receivership Estate from such an account;

I.   Continue to perform all incidental acts that the Temporary Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

J.   Continue to cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency;

K.   Continue to store documents and records of the Defendants relating to these proceedings by keeping such documents and records in a secure locked storage facility or the Temporary Receiver's locked facility until entry of a final and non-appealable judgment, and continuing to provide the Bureau with access to such documents and records upon reasonable request and notice, and to provide Defendants with access upon reasonable request or upon order of the Court.  The purpose of this access shall be to inspect, inventory, and copy any and all Documents and records or in the possession of the Temporary Receiver, provided that those Documents and property are not removed from the custody and control of the Temporary Receiver.  The Temporary Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.  After entry of a final and non-appealable judgment, the Temporary Receiver shall dispose of or arrange for the disposal of the stored records as it sees fit, provided that to safeguard the privacy of consumers, records containing personal financial information shall be shredded, incinerated, or otherwise disposed of in a secure manner;

L.   Dispose of, or arrange for the disposal of, the records of the Receivership Defendant that are not related to this action or that the Temporary Receiver deems appropriate to release to Defendants, except that prior to disposing of any such records belonging to Defendants the Temporary Receiver shall offer

1   the Defendants the opportunity to retrieve the documents.  If the Defendants

2   fail to make arrangements within 14 days of the Temporary Receiver's offer,

3   the Temporary Receiver is authorized to dispose of such documents as it sees

4   fit, provided that to safeguard the privacy of consumers, records containing

5   personal financial information shall be shredded, incinerated, or otherwise

6   disposed of in a secure manner;

7   M.   Perform all acts necessary to protect, conserve, preserve, and prevent waste or

8   dissipation of the non-liquid assets until their sale; and

9   N.   Sell the non-liquid assets without further order of the Court, including any

10   remaining office equipment and furniture, with the exception of the office

11   furniture in suites 2105, 2111, and 2118 at 5454 Wilshire Boulevard, Los

12   Angeles, CA, which the Temporary Receiver has released to the Defendants,

13   provided that if the Defendants fail to remove such equipment and furniture by

14   a date set by the Temporary Receiver, the Temporary Receiver is authorized to

15   dispose of such equipment and furniture as it sees fit.

16   Provided however, that upon entry of this Order, the Temporary Receiver shall

17   relinquish control of Suite 915 at 5455 Wilshire Boulevard, Los Angeles, CA 91210 to

18   Defendant Division One Investment and Loan, Inc. to engage in real estate transactions that

19   are outside the scope of mortgage assistance relief services subject to Regulation O.

20   Defendant Division One Investment and Loan, Inc. will be solely responsible for payment of

21   utilities and rent for Suite 915 as of the date that possession is released to Defendant

22   Division One Investment and Loan, Inc.

23   ### XIII.

24   ### COOPERATION WITH TEMPORARY RECEIVER

25   IT IS FURTHER ORDERED that:

26   A.   To the extent not already done pursuant to the TRO issued in this case,

27   Defendants, and their successors, assigns, officers, agents, directors, servants,

28   employees, salespersons, independent contractors, attorneys, and corporations,

and all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, shall fully cooperate with and assist the Temporary Receiver.  Defendants' cooperation and assistance shall include, but not be limited to:

1.      Providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority and discharging the responsibilities of the Temporary Receiver under this Order, including but not limited to allowing the Temporary Receiver to inspect Documents and Assets and to partition office space;

2.      Providing any username or password and executing any documents required to access any computer or electronic files in any medium, including but not limited to electronically stored information stored, hosted or otherwise maintained by an electronic data host; and

3.      Advising all persons who owe money to the Receivership Defendant that all debts should be paid directly to the Temporary Receiver.

B.   Defendants and their successors, assigns, officers, directors, agents, servants, employees, attorneys, and all other persons or entities directly or indirectly, in whole or in part, under their control, and all other persons in active concert or participation with who receive actual notice of this Order by personal service or otherwise, shall not interfere in any manner, directly or indirectly with the custody, possession, management, or control by the Temporary Receiver of Assets and Documents, and are hereby restrained and enjoined from directly or indirectly:

1.      Transacting any of the business of the Receivership Defendant;

2.      Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring or otherwise disposing of, in any manner, directly

or indirectly, any Documents or equipment of the Receivership Defendant, including but not limited to contracts, agreements, consumer files, consumer lists, consumer addresses and telephone numbers, correspondence, advertisements, brochures, sales material, sales presentations, Documents evidencing or referring to Defendants' services, training materials, scripts, data, computer tapes, disks, or other computerized records, books, written or printed records, handwritten notes, telephone logs, "verification" or "compliance" tapes or other audio or video tape recordings, receipt books, invoices, postal receipts, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, photographs, mobile devices, electronic storage media, accessories, and any other Documents, records or equipment of any kind that relate to the business practices or business or personal finances of the Receivership Defendant or any other entity directly or indirectly under the control of the Receivership Defendant;

3. Transferring, receiving, altering, selling, encumbering,  pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendant, or the Temporary Receiver;

4. Excusing debts owed to the Receivership Defendant;

5. Failing to notify the Temporary Receiver of any Asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other than the Receivership Defendant, or failing to provide any assistance or

1    information requested by the Temporary Receiver in connection with

2    obtaining possession, custody, or control of such Assets;

3        6.    Failing to create and maintain books, records, and accounts which, in

4    reasonable detail, accurately, fairly, and completely reflect the incomes,

5    Assets, disbursements, transactions and use of monies by the

6    Defendants or any other entity directly or indirectly under the control of

7    the Defendants;

8        7.    Doing any act or refraining from any act whatsoever to interfere with

9    the Temporary Receiver's taking custody, control, possession, or

10   managing of the Assets or Documents subject to this Receivership; or

11   to harass or to interfere with the Temporary Receiver in any way; or to

12   interfere in any manner with the exclusive jurisdiction of this Court

13   over the Assets or Documents of the Receivership Defendant; or to

14   refuse to cooperate with the Temporary Receiver or the Temporary

15   Receiver's duly authorized agents in the exercise of their duties or

16   authority under any Order of this Court; and

17       8.    Filing, or causing to be filed, any petition on behalf of the Receivership

18   Defendant for relief under the United States Bankruptcy Code, 11

19   U.S.C. § 101 et seq., without prior permission from this Court.

20   **XIV.**

21   **COMPENSATION FOR TEMPORARY RECEIVER**

22       IT IS FURTHER ORDERED that the Temporary Receiver and all personnel hired by

23   the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver

24   and accountants, are entitled to reasonable compensation for the performance of duties

25   pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them,

26   from the Assets now held by or in the possession or control of, or which may be received by,

27   the Receivership Defendant.  The Temporary Receiver shall not increase the hourly rates

28   used as the bases for such fee applications without prior approval of the Court.

-24-

## XV.

### RECEIVER'S FINAL REPORT AND DISBURSEMENT

IT IS FURTHER ORDERED that:

A.      No later than forty-five (45) days from the entry of this Order, the Temporary Receiver shall file and serve on the parties a report and accounting ("the Final Report") to the Court that details the steps taken to dissolve the Receivership estate.  The Final Report must include an accounting of the Receivership estate's finances and total assets and a description of what other actions, if any, must be taken to wind down the Receivership.  Included with the Final Report, the Temporary Receiver shall file its final application for payment of compensation and expenses associated with its performance of its duties as Temporary Receiver.  The only remaining responsibility of the Temporary Receiver after the Court's approval of the Final Report shall be the storage and access to documents as provided Section XI.L.

B.      The Receiver shall mail copies of the Final Report to all known creditors of the Receivership Defendant with a notice stating that any objections to paying any assets of the Receivership Defendant to satisfy the Temporary Receiver's costs and expenses must be submitted to the Court and served by mail upon the Temporary Receiver and the parties within thirty (30) days of the mailing of the Final Report.

C.      The Court will review the Final Report and any objections to the report and absent a valid objection, will issue an order directing that the Temporary Receiver:

1.      Pay the reasonable costs and expenses of administering the Receivership, including compensation of the Temporary Receiver and the Temporary Receiver's personnel authorized by Section XIII of this Order or other orders of this Court and the actual out-of-pocket costs incurred by the Temporary Receiver in carrying out its duties; and

1        2.     Pay all remaining funds into the Court's registry.

## XVI.

## TEMPORARY RECEIVER'S BOND/LIABILITY

IT IS FURTHER ORDERED that no bond shall be required in connection with the appointment of the Temporary Receiver.  Except for an act of gross negligence, the Temporary Receiver and the Professionals shall not be liable for any loss or damage incurred by any of the Defendants, their officers, agents, servants, employees, independent contractors, and attorneys or any other person, by reason of any act performed or omitted to be performed by the Temporary Receiver and the Professionals in connection with the discharge of his or her duties and responsibilities.

## XVII.

## PROHIBITION ON RELEASE OF CONSUMER INFORMATION

IT IS FURTHER ORDERED that, except as required by a law enforcement agency law, regulation or court order, Defendants, and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from disclosing, using, or benefitting from consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), of any person which any Defendant obtained prior to entry of this Order in connection with any mortgage assistance relief product or service.

## XVIII.

## STAY OF ACTIONS

IT IS FURTHER ORDERED that:

A.    Except by leave of this Court, during pendency of the Receivership ordered herein, Defendants and all other persons and entities are hereby stayed from taking any action to establish or enforce any claim, right, or interest for,

against, on behalf of, in, or in the name of, the Receivership Defendant, any of their subsidiaries, affiliates, partnerships, Assets, Documents, or the Temporary Receiver or the Temporary Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

1.      Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.      Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any Asset; attempting to foreclose, forfeit, alter, or terminate any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3.      Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4.      Doing any act or thing whatsoever to interfere with the Temporary Receiver taking custody, control, possession, or management of the Assets or Documents subject to this Receivership, or to harass or interfere with the Temporary Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendant;

B.      This Section XVIII does not stay:

1.      The commencement or continuation of a criminal action or proceeding;

2.      The commencement or continuation of an action or proceeding by the State Bar of California to enforce its police or regulatory power;

3.     The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

4.     The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

5.     The issuance to a Receivership Defendant of a notice of tax deficiency; and

C.     Except as otherwise provided in this Order, all persons and entities in need of documentation from the Temporary Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Temporary Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Temporary Receiver, any such person or entity may thereafter seek an Order of this Court with regard to the relief requested.

## XIX.

## MONITORING

IT IS FURTHER ORDERED that agents or representatives of the Bureau may contact Defendants directly or anonymously for the purpose of monitoring compliance with this Order, and may tape record any oral communications that occur in the course of such contacts.

## XX.

## NOTIFICATION OF BUSINESS ACTIVITIES

IT IS FURTHER ORDERED that:

A.     Defendants are hereby preliminarily enjoined from directly or indirectly creating, operating, or exercising any control over any business entity, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first serving on counsel for the Bureau a

written statement disclosing the following:  (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers and employees; and (4) a detailed description of the business entity's intended or actual activities.

B.   Individual Defendant shall notify the Commission at least seven (7) days prior to affiliating with, becoming employed by, or performing any work for any business that is not a named Defendant in this action. Each notice shall include his new business address and a statement of the nature of the business or employment and the nature of his duties and responsibilities in connection with that business or employment.

## XXI.

### DEFENDANTS' DUTY TO DISTRIBUTE ORDER

IT IS FURTHER ORDERED that Defendants shall immediately provide a copy of this Order to each affiliate,  subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, electronic data host, agent, attorney, spouse, and representative of Defendants and shall, within three (3) calendar days from the date of entry of this Order, provide counsel for the Bureau with a sworn statement that:  (a) confirms that Defendants have provided copies of the Order as required by this Section and (b) lists the names and addresses of each entity or person to whom Defendants provided a copy of the Order.  Furthermore, Defendants shall not take any action that would encourage officers, agents, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, or other persons or entities in active concert or participation with Defendants to disregard this Order or believe that they are not bound by its provisions.

## XXII.

## CORRESPONDENCE WITH PLAINTIFF

IT IS FURTHER ORDERED that, for the purposes of this Order, because mail addressed to the Bureau is subject to delay due to heightened security screening, all correspondence and service of pleadings on Plaintiff shall be sent either via electronic submission or via overnight delivery to:

Laura Schneider
Consumer Financial Protection Bureau
1700 G Street, NW, ATTN: 1750 PA
Washington, DC 20552
ATTN:        Office of Enforcement
Laura.schneider@cfpb.gov

with a copy to:

Kent Kawakami - Local Counsel, CA Bar # 149803
United States Attorney's Office
Central District of California - Civil Division
300 North Los Angeles Street, Room 7516
Los Angeles, CA 90012
Kent.Kawakami@usdoj.gov

## XXIII.

## SERVICE OF THIS ORDER

IT IS FURTHER ORDERED that copies of this Order may be served by facsimile transmission, email, personal or overnight delivery, or U.S. Mail, by agents and employees of the Bureau or any state or federal law enforcement agency or by private process server, upon any financial institution or other entity or person that may have possession, custody, or control of any Documents or Assets of any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

# XXIV.

## RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order, including but not limited to any disputes pertaining to the Temporary Receiver and whether or not such disputes arise before or after the Temporary Receiver's discharge.


DATED: November 16, 2012

_____
Percy Anderson
UNITED STATES DISTRICT JUDGE

-31-