1  KENT MARKUS, OH Bar #16005
   Enforcement Director
2  LAURA SCHNEIDER, NY Bar #2715449
3  (Phone: 202-435-7311)
   (Email: Laura.Schneider@cfpb.gov)
4  CRYSTAL R. SUMNER, CA Bar #261435
   (Phone: 202-435-7549)
5  (Email: Crystal.Sumner@cfpb.gov)
6  JAMES MEADE, DC Bar #414732
   (Phone: 202-435-9202)
7  (Email: James.Meade@cfpb.gov)
   Consumer Financial Protection Bureau
8  1700 G Street NW
9  Washington, DC 20552
   Fax: (202) 435-7722

10
11 KENT KAWAKAMI, CA Bar #149803 – Local Counsel
   (Phone: 213-894-4858)
12 (Email: Kent.Kawakami@usdoj.gov)
   United States Attorney's Office
13 Central District of California - Civil Division
   300 North Los Angeles Street, Room 7516
14 Los Angeles, CA 90012
   Fax: (213) 894-2380
15
16 Attorneys for Plaintiff
   Consumer Financial Protection Bureau
17

18                  UNITED STATES DISTRICT COURT
19                 CENTRAL DISTRICT OF CALIFORNIA

20
21 Consumer Financial Protection Bureau,    Case No. CV12-6147-RSWL (MRWx)

                    Plaintiff,
22                                          **STIPULATED FINAL JUDGMENT**
             v.                             **AND ORDER FOR PERMANENT**
23                                          **INJUNCTION AND SETTLEMENT**
   Chance Edward Gordon, *et al.*,          **OF CLAIMS AS TO DEFENDANTS**
24                 Defendants.              **ABRAHAM MICHAEL PESSAR,**
25                                          **DIVISION ONE INVESTMENT**
                                            **AND LOAN, INC., AND**
26                                          **PROCESSING DIVISION, L.L.C.**
27
28

Case 2:12-cv-06147-RSWL-MRW   Document 102   Filed 02/01/13   Page 2 of 26   Page ID
#:3817
Case 2:12-cv-06147-RSWL-MRW   Document 98-1   Filed 01/25/13   Page 2 of 29   Page ID
#:3710

1    Plaintiff, the Consumer Financial Protection Bureau ("CFPB" or "Bureau"),

2  commenced this civil action on July 18, 2012, pursuant to:  (1) Sections 1031(a), 1036(a),

3  1054, and 1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C.

4  §§ 5531(a), 5536(a), 5564, and 5565; and (2) Section 626 of the Omnibus Appropriations

5  Act, 2009, as amended by Section 1097 of the CFPA, 12 U.S.C. § 5538, and the

6  Mortgage Assistance Relief Services Rule, 16 C.F.R. Part 322, recodified as 12 C.F.R.

7  Part 1015 ("Regulation O"), by filing a Complaint for preliminary and permanent

8  injunctive relief, rescission or reformation of contracts, the refund of monies paid,

9  restitution, disgorgement of ill-gotten monies, and other relief for Defendants' acts or

10 practices in violation of the CFPA and Regulation O in connection with the marketing

11 and sale of mortgage assistance relief services.  The Bureau and Defendants Abraham

12 Michael Pessar, Division One Investment and Loan, Inc., and Processing Division,

13 L.L.C. (collectively "Settling Defendants") hereby stipulate to this Final Judgment and

14 Order for Permanent Injunction and Settlement of Claims ("Order").

## FINDINGS

16    By stipulation of the parties and being advised of the premises, the Court finds:

17    1.    This is an action by the Bureau instituted under Sections 1031(a), 1036(a),

18 1054, and 1055 of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a), 5564, and 5565; and

19 Regulation O, 16 C.F.R. Part 322, recodified as 12 C.F.R. Part 1015.  The Complaint

20 seeks permanent injunctive relief and monetary relief for the Settling Defendants' alleged

21 acts or practices in violation of the CFPA and Regulation O as alleged therein.  The

22 Bureau has the authority under the CFPA and Regulation O to seek the relief it has

23 requested.

24    2.    The Complaint states a claim upon which relief can be granted against the

25 Settling Defendants.

3.  This Court has jurisdiction over the subject matter of this case and has jurisdiction over the Settling Defendants.  Venue in the Central District of California is proper.

4.  The Bureau and the Settling Defendants stipulate and agree to entry of this Order, without trial or final adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct of the Settling Defendants alleged in the Complaint to the date of entry of this Order.  This settlement does not settle and resolve any matters not alleged in the Complaint.  The Settling Defendants have consented to entry of this Order without admitting or denying any of the allegations set forth in the Complaint, other than admitting the jurisdictional facts.

5.  The Settling Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order.  The Settling Defendants also waive any claim that they may have held under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order.  Each settling party shall bear its own costs and attorneys fees.

6.  This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

7.  Entry of this Order is in the public interest.

## DEFINITIONS

For the purposes of this Order, the following definitions shall apply:

1.  "Assets" means any legal or equitable interest in, right to or claim to any real, personal, or intellectual property, wherever located, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, trusts, and all cash.

2.  "Assisting others" includes, but is not limited to:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

a.    performing customer service functions including, but not limited to, receiving or responding to consumer complaints;

b.    formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication;

c.    formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

d.    providing names of, or assisting in the generation of, potential customers;

e.    performing marketing, billing, or payment services of any kind; and

f.    acting or serving as an owner, officer, director, manager, or principal of any entity.

2.    "Competent and reliable evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

3.    "Consumer financial product or service" is synonymous in meaning and equal in scope to the definitions of the term in section 1002(5) and (15) of the CFPA, and, subject to applicable restrictions contained in the CFPA, includes but is not limited to:

a.     extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit (other than solely extending commercial credit to a person who originates consumer credit transactions);

b.     providing real estate settlement services or performing appraisals of real estate or personal property;

c.     collecting, analyzing, maintaining, or providing consumer report information or other account information, including information relating to the credit history of consumers, used or expected to be used in connection with any decision regarding the offering or provision of a consumer financial product or service; and

d.     collecting debt related to any consumer financial product or service.

4.     "Debt relief product or service" means any product, service, plan, or program represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation, including but not limited to a tax debt or obligation, between a person and one or more creditors or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a person to a creditor or debt collector.

5.     "Defendants" means Chance Edward Gordon, The Gordon Law Firm, P.C., Abraham Michael Pessar, Division One Investment and Loan, Inc., and Processing Division, L.L.C., individually, collectively, or in any combination, and each of them by whatever names each might be known.

6.     "Document" and "Electronically Stored Information" are synonymous in meaning and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules of Civil Procedure and include but are not limited to writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which the information can be obtained and translated, if necessary, through detection devices into reasonably usable form.

Case 2:12-cv-06147-RSWL-MRW   Document 102   Filed 02/01/13   Page 6 of 26   Page ID
Case 2:12-cv-06147-RSWL-MRW   Document 98-1   Filed 01/25/13   Page 6 of 29   Page ID
#:3824
#:3714

7.     "Federal homeowner relief or financial stability program" means any program (including its sponsoring agencies, telephone numbers, and Internet websites) operated or endorsed by the United States government to provide relief to homeowners or stabilize the economy, including but not limited to:

a.     the Making Home Affordable Program;

b.     the Financial Stability Plan;

c.     the Troubled Asset Relief Program and any other program sponsored or operated by the United States Department of the Treasury;

d.     the HOPE for Homeowners program, any program operated or created pursuant to the Helping Families Save Their Homes Act, and any other program sponsored or operated by the Federal Housing Administration;

e.     any program sponsored or operated by the United States Department of Housing and Urban Development ("HUD"), the HOPE NOW Alliance, the Homeownership Preservation Foundation, or any HUD-approved housing counseling agency;

f.     the claims program mandated by the February 2012 settlements entered into by state attorneys general, the federal government, and five mortgage servicers (www.nationalmortgagesettlement.com); or

g.     the Independent Foreclosure Review program mandated by the April 2011 settlements entered into by the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Office of Thrift Supervision, and fourteen mortgage servicers (www.IndependentForeclosureReview.com).

8.     "Material fact" means any fact that is likely to affect a person's choice of, or conduct regarding, goods or services.

9.     "Mortgage assistance relief product or service" means any product, service, plan, or program, offered or provided to the consumer in exchange for

1   consideration, that is represented, expressly or by implication, to assist or attempt

2   to assist the consumer with any of the following:

3       a.    stopping, preventing, or postponing any mortgage or deed of trust

4       foreclosure sale for the consumer's dwelling, any repossession of the

5       consumer's dwelling, or otherwise saving the consumer's dwelling from

6       foreclosure or repossession;

7       b.    negotiating, obtaining, or arranging a modification of any term of

8       dwelling loan, including a reduction in the amount of interest, principal

9       balance, monthly payments, or fees;

10      c.    obtaining any forbearance or modification in the timing of payments

11      from any dwelling loan holder or servicer on any dwelling loan;

12      d.    negotiating, obtaining, or arranging any extension of the period of

13      time within which the consumer may (i) cure his or her default on a dwelling

14      loan, (ii) reinstate his or her dwelling loan, (iii) redeem a dwelling, or (iv)

15      exercise any right to reinstate a dwelling loan or redeem a dwelling;

16      e.    obtaining any waiver of an acceleration clause or balloon payment

17      contained in any promissory note or contract secured by any dwelling; or

18      f.    negotiating, obtaining, or arranging (i) a short sale of a dwelling, (ii) a

19      deed in lieu of foreclosure, or (iii) any other disposition of a dwelling loan

20      other than a sale to a third party that is not the dwelling loan holder.

21  The foregoing shall include any manner of claimed assistance, including, but not

22  limited to, auditing or examining a consumer's mortgage or home loan application.

23  10.    "Person" means an individual, partnership, company, corporation,

24  association (incorporated or unincorporated), trust, estate, cooperative

25  organization, or other entity.

26

27

28

1    11.   "Related Consumer Action" means a private-damages action brought against

2    Settling Defendants by or on behalf of one or more consumers based on

3    substantially the same facts as alleged in the Complaint in this action.

4    12.   "Settling Defendants" means Abraham Michael Pessar, Division One

5    Investment and Loan, Inc., and Processing Division, L.L.C, and their successors,

6    assigns, affiliates, or subsidiaries, and each of them by whatever names each might

7    be known.

8    13.   "Temporary Receiver" means Robb Evans & Associates, 11450 Sheldon

9    Street, Sun Valley, CA 91352-1121.

10    14.   The words "and" and "or" shall be understood to have both conjunctive and

11    disjunctive meanings as necessary to make the applicable phrase or sentence

12    inclusive rather than exclusive.

## ORDER

## I.

## BAN ON MORTGAGE ASSISTANCE AND DEBT RELIEF
## PRODUCTS AND SERVICES

17    **IT IS HEREBY ORDERED** that the Settling Defendants, whether acting directly

18    or through any other person, are permanently restrained and enjoined from:

19    A.   Advertising, marketing, promoting, offering for sale, or selling any mortgage

20    assistance or debt relief product or service; and

21    B.   Assisting others engaged in advertising, marketing, promoting, offering for

22    sale, or selling any mortgage assistance or debt relief product or service.

23    *Provided*, that sections I.A. and B. shall not prohibit the actions of any Settling

24    Defendant that is licensed or registered as a real estate broker or real estate agent, in

25    accordance with State law, to the extent that such Settling Defendant: (1) acts as a real

26    estate agent or broker for a buyer, seller, lessor, or lessee of real property; (2) brings

27    together parties interested in the sale, purchase, lease, rental, or exchange of real

Case 2:12-cv-06147-RSWL-MRW  Document 102  Filed 02/01/13  Page 9 of 26  Page ID
#:3824
Case 2:12-cv-06147-RSWL-MRW  Document 98-1  Filed 01/25/13  Page 9 of 29  Page ID
#:3717

1  property; (3) negotiates, on behalf of any party, any portion of a contract relating to the

2  sale, purchase, lease, rental or exchange of real property (other than in connection with

3  the provision of financing with respect to any such transaction); or (4) offers to engage in

4  any activity, or act in any capacity, described in subparagraphs (1), (2), or (3) above.

5  **II.**

6  **PROHIBITED MISREPRESENTATIONS RELATING TO CONSUMER**

7  **FINANCIAL PRODUCTS OR SERVICES**

8  **IT IS FURTHER ORDERED** that the Settling Defendants and their officers,

9  agents, servants, employees, and attorneys, and those persons in active concert or

10  participation with any of them who receive actual notice of this Order by personal

11  service, facsimile transmission, email, or otherwise, whether acting directly or through

12  any corporation, subsidiary, division, or other device, in connection with the advertising,

13  marketing, promotion, offering for sale, sale, or performance of any consumer financial

14  product or service, are hereby permanently restrained and enjoined from:

15      A.    Misrepresenting, or assisting others in misrepresenting, expressly or by

16      implication, any material fact, including but not limited to:

17          1.    The terms or rates that are available for any loan or other extension of

18          credit, including but not limited to:

19              a)    Closing costs or other fees;

20              b)    The payment schedule, the monthly payment amount(s), or

21          other payment terms, or whether there is a balloon payment; interest

22          rate(s), annual percentage rate(s), or finance charge(s); the loan

23          amount, the amount of credit; the draw amount, or outstanding

24          balance; the loan term, the draw period, or maturity; or any other term

25          of credit;

26              c)    The savings associated with the credit;

27

28

Case 2:12-cv-06147-RSWL-MRW   Document 102   Filed 02/01/13   Page 10 of 26   Page ID
#:3825
Case 2:12-cv-06147-RSWL-MRW   Document 98-1   Filed 01/25/13   Page 10 of 29   Page ID
#:3718

d)      The amount of cash to be disbursed to the borrower out of the proceeds, or the amount of cash to be disbursed on behalf of the borrower to any third parties;

e)      Whether the payment of the minimum amount specific each month covers both interest and principal, and whether the credit has or can result in negative amortization;

f)      That the credit does not have a prepayment penalty or that no prepayment penalty and/or other fees or costs will be incurred if the consumer subsequently refinances; and

g)      That the interest rate(s) or annual percentage rate(s) are fixed rather than adjustable or adjustable rather than fixed;

2.      Any person's ability to improve or otherwise affect a consumer's credit record, credit history, or credit rating or ability to obtain credit;

3.      That any person can improve any consumer's credit record, credit history, or credit rating by permanently removing negative information from the consumer's credit record, credit history, or credit rating, even where such information is accurate and not obsolete;

4.      Any aspect of any consumer financial product or service, including but not limited to, the amount of savings a consumer will receive from purchasing, using, or enrolling in such consumer financial product or service, or the reduction or cessation of collection calls;

5.      Any aspect of the terms of any refund, cancellation, exchange, or repurchase policy, including but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

6.      That a consumer will receive legal representation;

1       7.    That any person providing a testimonial has purchased, received, or

2      used the specific consumer financial product or service;

3       8.    That the experience represented in a testimonial of the consumer

4      financial product or service represents the person's actual experience

5      resulting from the use of the consumer financial product or service under the

6      circumstances depicted in the advertisement;

7       9.    The total costs to purchase, receive, or use, or the quantity of, the

8      consumer financial product or service, including that there will be no charge

9      for all or a portion of such service;

10      10.    That any person is affiliated with, endorsed or approved by, or

11      otherwise connected to any other person, government entity, any federal

12      homeowner relief or financial stability program, public, non-profit, or other

13      non-commercial program, or any other program;

14      11.    Any material restriction, limitation, or condition to purchase, receive,

15      or use the consumer financial product or service; and

16      12.    Any material aspect of the performance, efficacy, nature, or

17      characteristics of the consumer financial product or service.

18    B.    Advertising or assisting others in advertising credit terms other than those

19    terms that actually are or will be arranged or offered by a creditor or lender; and

20    C.    Advising a customer that the customer cannot or should not contact,

21    communicate with, or make payments to the customer's lender or servicer.

22                           **III.**

23    **SUBSTANTIATION FOR BENEFIT, PERFORMANCE, AND EFFICACY**

24                           **CLAIMS**

25      **IT IS FURTHER ORDERED** that the Settling Defendants and their officers,

26  agents, servants, employees, and attorneys, and those persons or entities in active concert

27  or participation with any of them who receive actual notice of this Order by personal

28                                11

Case 2:12-cv-06147-RSWL-MRW   Document 102   Filed 02/01/13   Page 12 of 26   Page ID
#:3827
Case 2:12-cv-06147-RSWL-MRW   Document 98-1   Filed 01/25/13   Page 12 of 29   Page ID
#:3720

1   service, facsimile transmission, email, or otherwise, whether acting directly or through

2   any corporation, subsidiary, division, or other device, in connection with the advertising,

3   marketing, promotion, offering for sale, or sale of any consumer financial product or

4   service are hereby permanently restrained and enjoined from making any representation

5   or assisting others in making any representation, expressly or by implication, about the

6   benefits, performance, or efficacy of any consumer financial product or service, unless, at

7   the time such representation is made, the Settling Defendants possess and rely upon

8   competent and reliable evidence that substantiates that the representation is true.

9                                          **IV.**

10                  **COOPERATION WITH BUREAU COUNSEL**

11            **IT IS FURTHER ORDERED** that the Settling Defendants shall, in connection

12   with this action or any subsequent investigation or litigation related to or associated with

13   the transactions or occurrences that are the subject of the Bureau's Complaint, cooperate

14   in good faith with the Bureau, and appear at such places and times as the Bureau shall

15   reasonably request, after written notice, for interviews, conferences, pretrial discovery,

16   review of documents, and for such other matters as may be reasonably requested by the

17   Bureau. If requested in writing by the Bureau, the Settling Defendants shall appear and

18   testify at any trial, deposition, or other proceeding related to or associated with the

19   transactions or the occurrences that are the subject of the Complaint, without service of a

20   subpoena.

21                                          **V.**

22          **PROHIBITION ON DISCLOSING CUSTOMER INFORMATION**

23            **IT IS FURTHER ORDERED** that the Settling Defendants and their officers,

24   agents, servants, employees, and attorneys, and those persons in active concert or

25   participation with any of them who receive actual notice of this Order by personal

26   service, facsimile transmission, email, or otherwise, whether acting directly or through

27

28

Case 2:12-cv-06147-RSWL-MRW   Document 102   Filed 02/01/13   Page 13 of 26   Page ID
#:3828
Case 2:12-cv-06147-RSWL-MRW   Document 98-1   Filed 01/25/13   Page 13 of 29   Page ID
#:3721

1   any corporation, subsidiary, division, or other device, are permanently restrained and

2   enjoined from:

3       A.   Disclosing, using, or benefitting from customer information, including the

4       name, address, telephone number, email address, social security number, other

5       identifying information, or any data that enables access to a customer's account

6       (including a credit card, bank account, or other financial account) of any person

7       that any Settling Defendant obtained prior to entry of this Order in connection with

8       the advertising, marketing, promotion, offering for sale or sale of any mortgage

9       assistance relief service or any debt relief service; and

10       B.   Failing to dispose of such customer information in all forms in their

11       possession, custody, or control within thirty (30) days after entry of this Order.

12       Disposal shall be by means that protect against unauthorized access to the

13       customer information, such as by burning, pulverizing, or shredding any papers,

14       and by erasing or destroying any electronic media, to ensure that the customer

15       information cannot practicably be read or reconstructed.

16   *Provided, however*, that prior to destroying any customer information, Settling

17   Defendants must disclose such information to the Bureau; and

18   *Further provided*, that that prior to destroying any customer information, Settling

19   Defendants may disclose such information to the extent requested by a government

20   agency or required by a law, regulation, or court order.

21   **VI.**

22   **PROHIBITION ON COLLECTING ACCOUNTS**

23   **IT IS FURTHER ORDERED** that Settling Defendants, and their officers, agents,

24   servants, employees, attorneys, and all other persons in active concert or participation

25   with them who receive actual notice of this Order by personal service, facsimile

26   transmission, email, or otherwise, whether acting directly or through any corporation,

27   subsidiary, division, or other device, are hereby permanently restrained and enjoined

28

Case 2:12-cv-06147-RSWL-MRW Document 102 Filed 02/01/13 Page 14 of 26 Page ID
#:3829
Case 2:12-cv-06147-RSWL-MRW Document 98-1 Filed 01/25/13 Page 14 of 29 Page ID
#:3722

1    from attempting to collect, collecting, selling, or assigning, or otherwise transferring any

2    right to collect payment from any consumer who purchased or agreed to purchase

3    mortgage assistance relief products or services from Defendants.

## VII.

## ORDER TO PAY CIVIL-MONEY PENALTY

**IT IS FURTHER ORDERED** that:

A.    By reason of the alleged violations of law, and because of the Settling

Defendants' demonstrated inability to pay a higher amount, and taking into

account such other matters as justice may require, pursuant to section 1055(c) of

the CFPA, 12 U.S.C. §5565(c), Settling Defendants shall pay a total civil-money

penalty of one dollar ($1).

B.    Within ten (10) days of the Court's entry of this Order, Settling Defendants

shall pay the one dollar ($1) civil-money penalty in the form of a wire transfer to

the Bureau or to such agent as the Bureau may direct, and in accordance with

wiring instructions to be provided by counsel for the CFPB, in accordance with

section 1017(d) of the CFPA, §12 U.S.C. 5497(d).

C.    The civil-money penalty paid pursuant to this Order shall be deposited in the

Civil Penalty Fund of the Bureau. Payments from the Civil Penalty Fund may be

made to victims of activities for which civil penalties have been imposed under the

Federal consumer financial laws, including eligible victims of activities of the

Defendants alleged in the Complaint.

## VIII.

## JUDGMENT FOR EQUITABLE MONETARY RELIEF

**IT IS FURTHER ORDERED** that:

A.    A judgment for equitable monetary relief and damages is hereby entered in

favor of the Bureau and against the Settling Defendants, jointly and severally, in

the amount of ten million dollars ($10,000,000); provided, however, that full

payment of this judgment shall be suspended upon satisfaction of the obligations

Case 2:12-cv-06147-RSWL-MRW   Document 102   Filed 02/01/13   Page 15 of 26   Page ID
#:3838
Case 2:12-cv-06147-RSWL-MRW   Document 98-1   Filed 01/25/13   Page 15 of 29   Page ID
#:3723

1    set forth in subparagraphs B through D of this section, and subject to Sections IX

2    and X of this Order.

3        B.    To partially satisfy the judgment as set forth in subsection A above, Settling

4    Defendants hereby grant to the Bureau all rights and claims they have to their

5    frozen assets currently in the possession, custody, or control of the Temporary

6    Receiver ("Pessar Funds"), and shall forfeit any rights to the Pessar Funds in the

7    Receivership Estate, including but not limited to:

8        1.    Funds that were previously held in Account Number XXXXX3561 at

9    JP Morgan Chase Bank in the name of DAE Holdings, L.L.C., which

10   amount is approximately $200,000;

11       2.    Funds that were previously held in Account Number XXXXX9166 at

12   JP Morgan Chase Bank in the name of Processing Division, L.L.C., which

13   amount is approximately $110,626.74;

14       3.    Funds that were previously held in Account Number XXXXX3948 at

15   JP Morgan Chase Bank in the name of Processing Division, L.L.C., which

16   amount is approximately $2,719.22;

17       4.    Funds that were previously held in Account Number XXXXX8769 at

18   JP Morgan Chase Bank in the name of Processing Division, L.L.C., which

19   amount is approximately $3.44;

20       5.    Funds that were previously held in Account Number XXXXX2511 at

21   JP Morgan Chase Bank in the name of Attorney Marketing Services, Inc.,

22   which amount is approximately $3,766.83;

23       6.    Funds that were previously held in Account Number XXXXX3955at

24   JP Morgan Chase Bank in the name of Nation Source, L.L.C., which amount

25   is approximately $11,568.65;

26

27

28

Case 2:12-cv-06147-RSWL-MRW   Document 102   Filed 02/01/13   Page 16 of 26   Page ID
#:3831
Case 2:12-cv-06147-RSWL-MRW   Document 98-1   Filed 01/25/13   Page 16 of 29   Page ID
#:3724

7.     Funds that were previously held in Account Number XXXXX1036at JP Morgan Chase Bank in the name of Empire Legal, which amount is approximately $92.37;

8.     Funds that were previously held in Account Number XXXXX7975 at JP Morgan Chase Bank in the name of Attorney Marketing Services, Inc.;

9.     Funds that were previously held in Account Number XXXXX1132at JP Morgan Chase Bank in the name of Empire Legal;

10.    Funds that were previously held in Account Number XXXXX9078at JP Morgan Chase Bank in the name of Empire Legal;

11.    Funds that were previously held in Account Number XX6209 with Meracord in the name of Empire Legal, which amount is approximately $3,329.16;

12.    Funds from the JP Morgan Chase Cashier's Check #43329471 addressed to Division One Investment & Loan, Inc., which amount is $1,850;

13.    Funds obtained from the sale by the Temporary Receiver of furniture and office equipment located at 5455 Wilshire Boulevard, Suites 2005, 2011, 2012, and 2025, Los Angeles, CA 91210, which amount is approximately $4,653.19;

14.    Funds obtained from the sale by the Temporary Receiver of the 2004 Lamborghini Coupe with Vehicle Identification Number ZHWGU11M54LA01816, which amount is approximately $55,000; and

15.    Any other funds held by or deposited into the Court Registry by the Temporary Receiver.

C.     In partial satisfaction of the judgment as set forth in subsection A above, the Temporary Receiver shall within ten (10) days of the Court's authorization of

1    payment of fees and expenses to the Temporary Receiver, wire transfer the

2    remaining Pessar Funds to the Bureau or to such agent as the Bureau may direct.

3    *Provided that*, in the event that all or a portion of the Pessar Funds have been

4    deposited into the Court Registry at the time the Court enters this Order, such

5    funds shall be transferred from the Court Registry to the Bureau.

6    D.    Any Pessar Funds received by the Bureau in partial satisfaction of the

7    judgment in subsection A above shall be deposited into a fund or funds

8    administered by the Bureau or its agent in accordance with applicable statutes and

9    regulations to be used for redress for consumers injured by the activities of

10   Defendants alleged in the Complaint, including, but not limited to, refunds of

11   moneys, restitution, damages or other monetary relief, and any attendant expenses

12   for the administration of any such redress.

13   1.    Settling Defendants shall cooperate fully to assist the Bureau in

14   identifying consumers who should receive redress and in what amount.

15   2.    If the Bureau determines, in its sole discretion, that redress to

16   consumers is wholly or partially impracticable or if funds remain after

17   redress is completed, the Bureau may apply any remaining funds for such

18   other equitable relief (including consumer information remedies) as

19   determined to be reasonably related to Defendants' practices alleged in the

20   Complaint. Any funds not used for such equitable relief shall be deposited

21   in the U.S. Treasury as disgorgement. Settling Defendants shall have no

22   right to challenge the Bureau's choice of remedies under this Section, and

23   shall have no right to contest the manner of distribution chosen by the

24   Bureau.

25   3.    The judgment for equitable monetary relief and damages is solely

26   remedial in nature and is not a fine, penalty, punitive assessment, or

27   forfeiture.

28

17

Case 2:12-cv-06147-RSWL-MRW   Document 102   Filed 02/01/13   Page 18 of 26   Page ID
#:3833
Case 2:12-cv-06147-RSWL-MRW   Document 98-1   Filed 01/25/13   Page 18 of 29   Page ID
#:3726

## IX.

## OTHER MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.     In the event of any default on Settling Defendants' obligation to make payment required by this Order, interest, computed pursuant to 28 U.S.C. § 1961, as amended, shall accrue on any outstanding amounts not paid from the date of default to the date of payment, and shall immediately become due and payable.

B.     The Settling Defendants shall relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law.  The Settling Defendants shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

C.     The Settling Defendants agree that the facts as alleged in the Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued by the Bureau to enforce its rights to any payment or money judgment pursuant to this Order, including but not limited to a nondischargeability complaint in any bankruptcy case.  Settling Defendants further agree that the facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and that this Order shall have collateral estoppel effect for such purposes.

D.     In accordance with 31 U.S.C. § 7701, Settling Defendants, unless they have already done so, shall furnish to the Bureau their taxpayer identifying numbers, which shall be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

E.     Pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 168lb(a)(1), any consumer reporting agency may furnish a consumer report

Case 2:12-cv-06147-RSWL-MRW  Document 102  Filed 02/01/13  Page 19 of 26  Page ID
#:3834
Case 2:12-cv-06147-RSWL-MRW  Document 98-1  Filed 01/25/13  Page 19 of 29  Page ID
#:3727

1  concerning any Settling Defendant to the Bureau, which shall be used for purposes

2  of collecting and reporting on any delinquent amount arising out of this Order.

3  F.     Settling Defendants shall not seek or accept, directly or indirectly,

4  reimbursement or indemnification from any source, including but not limited to

5  payment made pursuant to any insurance policy, with regard to any monetary

6  relief, whether in the form of equitable monetary relief, damages, or a civil-money

7  penalty, that Settling Defendants pay pursuant to this Order, regardless of whether

8  any civil-money penalty amounts or any part thereof are added to the Civil Penalty

9  Fund or otherwise used for the benefit of consumers.

10  G.     Settling Defendants shall not claim, assert, or apply for a tax deduction or

11  tax credit with regard to any federal, state, or local tax for any monetary relief,

12  whether in the form of equitable monetary relief, damages, or a civil-money

13  penalty, that Settling Defendants pay pursuant to this Order, regardless of whether

14  any civil-money penalty amounts or any part thereof are added to the Civil Penalty

15  Fund or otherwise used for the benefit of consumers.

16  ## X.

17  ## RIGHT TO REOPEN

18  **IT IS FURTHER ORDERED** that the Bureau's agreement to, and the Court's

19  approval of, this Order is expressly premised on the truthfulness, accuracy, and

20  completeness of Settling Defendants' financial statements and supporting documents

21  submitted to the Bureau on or about July 24, 2012, December 17, 2012, and December

22  21, 2012, which Settling Defendants assert are truthful, accurate, and complete.  If, upon

23  motion by the Bureau, the Court finds that any of the Settling Defendants have failed to

24  disclose any material asset or the financial statement of any Settling Defendant contains

25  any material misrepresentation or omission, including materially misstating the value of

26  any asset, then this Order shall be reopened and the Court shall terminate the suspension

27  of the monetary judgment entered in Section VIII.  The Court, without further

28

Case 2:12-cv-06147-RSWL-MRW   Document 102   Filed 02/01/13   Page 20 of 26   Page ID
#:3835
Case 2:12-cv-06147-RSWL-MRW   Document 98-1   Filed 01/25/13   Page 20 of 29   Page ID
#:3728

1   adjudication, shall reinstate the judgment entered in Section VIII of this Order and the

2   full amount of ten million dollars ($10,000,000) will become immediately due and

3   payable less any amounts paid to the Bureau pursuant to Section VIII of the Order.

4        *Provided, however*, that in all other respects this Order shall remain in full force

5   and effect unless otherwise ordered by the Court; and, *provided further*, that proceedings

6   instituted under this provision would be in addition to, and not in lieu of any other civil or

7   criminal remedies as may be provided by law, including any other proceedings that the

8   Bureau may initiate to enforce this Order. For purposes of this Section, Settling

9   Defendants waive any right to contest any of the allegations in the Complaint.

10       Upon any reinstatement of the monetary judgment pursuant to this Section, the

11  Court shall make an express determination that the monetary judgment shall be

12  immediately due and payable. The Bureau shall be entitled to interest on the judgment,

13  computed from the date of entry of this Order, at the rate prescribed by 28 U.S.C. § 1961,

14  as amended, on any outstanding amounts not paid. The Bureau shall be permitted to

15  execute on the judgment immediately after the suspension is lifted and engage in

16  discovery in aid of execution.

17                                    **XI.**

18                       **LIFTING OF ASSET FREEZE**

19       **IT IS FURTHER ORDERED** that upon entry of this Order, the freeze of Settling

20  Defendants' assets pursuant to the Stipulated Preliminary Injunction entered on

21  November 16, 2012, shall be dissolved upon payment of the judgment pursuant to

22  Section VIII of this Order.

23                                    **XII.**

24                     **ORDER ACKNOWLEDGMENTS**

25       **IT IS FURTHER ORDERED** that Settling Defendants provide and obtain

26  acknowledgments of receipt of this Order:

27

28                                      20

Case 2:12-cv-06147-RSWL-MRW  Document 102  Filed 02/01/13  Page 21 of 26  Page ID
#:3836
Case 2:12-cv-06147-RSWL-MRW  Document 98-1  Filed 01/25/13  Page 21 of 29  Page ID
#:3729

A.     Each Settling Defendant within seven (7) days of entry of this Order, must submit to the Bureau an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For five (5) years after entry of this Order, Settling Defendant Abraham Michael Pessar, for any business that he, individually or collectively with any other Defendant, is the majority owner or directly or indirectly controls, and each Settling Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and managers; (2) all employees, agents, and representatives who participate in conduct related to the marketing of any financial good or service; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  To all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Settling Defendant delivered a copy of this Order, that Settling Defendant must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Order and provide such records to the Bureau in accordance with Section XIII of this Order.

## XIII.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that in order to monitor compliance with the provisions of this Order:

A.     One hundred and eighty (180) days after entry of this Order, each Settling Defendant must submit a compliance report to the Bureau, sworn under penalty of perjury.

1.     Each Settling Defendant must:  (a) designate at least one telephone number and an email, physical, and postal address as points of contact, which representatives of the Bureau may use to communicate with the

Case 2:12-cv-06147-RSWL-MRW   Document 102   Filed 02/01/13   Page 22 of 26   Page ID
#:3837
Case 2:12-cv-06147-RSWL-MRW   Document 98-1   Filed 01/25/13   Page 22 of 29   Page ID
#:3730

1    Settling Defendant; (b) identify all of that Settling Defendant's businesses

2    by all of their names, telephone numbers, and physical, postal, email, and

3    Internet addresses; (c) describe the activities of each business, including the

4    products and services offered, the means of advertising, marketing, and

5    sales, and the involvement of any other Defendant (which Settling

6    Defendant Pessar must describe if he knows or should know due to his own

7    involvement); (d) describe in detail whether and how that Settling Defendant

8    is in compliance with each Section of this Order; and (e) provide a copy of

9    each Order Acknowledgment obtained pursuant to this Order, unless

10   previously submitted to the Bureau;

11         2.      Additionally, Settling Defendant Abraham Michael Pessar must:  (a)

12   identify all telephone numbers and all email, Internet, physical, and postal

13   addresses, including all residences; (b) identify all titles and roles in all

14   business activities, including any business for which such Settling Defendant

15   performs services whether as an employee or otherwise and any entity in

16   which such Settling Defendant has any ownership interest; and (c) describe

17   in detail such Settling Defendant's involvement in each such business,

18   including title, role, responsibilities, participation, authority, control, and any

19   ownership.

20   B.    For ten (10) years following entry of this Order, each Settling Defendant

21   must submit a compliance notice, sworn under penalty of perjury, within fourteen

22   (14) days of any change in the following:

23         1.      Each Settling Defendant must report any change in:  (a) any

24   designated point of contact; or (b) the structure of the corporate Settling

25   Defendants or any entity that any Settling Defendant has any ownership

26   interest in or directly or indirectly controls that may affect compliance

27   obligations arising under this Order, including:  creation, merger, sale, or

28

Case 2:12-cv-06147-RSWL-MRW  Document 102  Filed 02/01/13  Page 23 of 26  Page ID
#:3838
Case 2:12-cv-06147-RSWL-MRW  Document 98-1  Filed 01/25/13  Page 23 of 29  Page ID
#:3731

dissolution, or the sale of all or substantially all of the assets, of a Settling

Defendant or any such entity or any subsidiary, parent, or affiliate that

engages in any acts or practices subject to this Order.

2.     Additionally, Settling Defendant Pessar must report any change in:

(a) name, including aliases or fictitious name, or residence address; or (b)

title or role in any business activity, including any business for which such

Settling Defendant performs services whether as an employee or otherwise

and any entity in which such Settling Defendant has any ownership interest,

and identify its name, physical address, and Internet address, if any.

C.     Each Settling Defendant must submit to the Bureau notice of the filing of

any bankruptcy petition, insolvency proceeding, or any similar proceeding by or

against such Settling Defendant within fourteen (14) days of its filing.

D.     Any submission to the Bureau required by this Order to be sworn under

penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746,

such as by concluding:  "I declare under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct.  Executed

on:_____" and supplying the date, signatory's full name, title (if applicable), and

signature.

E.     Unless otherwise directed by a Bureau representative in writing, all

submissions to the Bureau pursuant to this Order must be emailed to

enforcement@cfpb.gov or sent by commercial overnight courier (not the U.S.

Postal Service) to:

Assistant Director for Enforcement
Consumer Financial Protection Bureau
1700 G Street, NW, ATTN: 1750 PA
Washington, DC 20552
ATTN:  Office of Enforcement

The subject line must begin:  RE:  CFPB v. Gordon, et al.

Case 2:12-cv-06147-RSWL-MRW   Document 102   Filed 02/01/13   Page 24 of 26   Page ID
#:3838
Case 2:12-cv-06147-RSWL-MRW   Document 98-1   Filed 01/25/13   Page 24 of 29   Page ID
#:3732

## XIV.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that the Settling Defendants must create certain records for ten (10) years after entry of the Order, and retain each such record for five (5) years after its creation.  Specifically, each Settling Defendant for any business involving consumer financial products or services in which that Settling Defendant, individually or collectively with any other Defendants, is a majority owner or directly or indirectly controls, must maintain the following records:

A. Accounting records showing the revenues from all consumer financial products or services, all costs incurred in generating those revenues, and the resulting net profit or loss;

B. Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C. Customer files showing the names, addresses, telephone numbers, dollar amounts paid, and the quantity and description of goods or services purchased;

D. Complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

E. All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau; and

F. A copy of each advertisement or other marketing material related to the marketing of any consumer financial product or service.

## XV.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Settling Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended:

Case 2:12-cv-06147-RSWL-MRW   Document 102   Filed 02/01/13   Page 25 of 26   Page ID
#:3840
Case 2:12-cv-06147-RSWL-MRW   Document 98-1   Filed 01/25/13   Page 25 of 29   Page ID
#:3733

1    A.    Within fourteen (14) days of receipt of a written request from a

2    representative of the Bureau, each Settling Defendant must:  submit additional

3    compliance reports or other requested information, which must be sworn under

4    penalty of perjury; appear for depositions; and produce documents for inspection

5    and copying.  The Bureau is also authorized to obtain discovery, without further

6    leave of court, using any of the procedures prescribed by Federal Rules of Civil

7    Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

8    B.    For matters concerning this Order, the Bureau is authorized by this Order to

9    communicate directly with each Settling Defendant.  Settling Defendants must

10   permit representatives of the Bureau to interview any employee or other person

11   affiliated with any Settling Defendant who has agreed to such an interview.  The

12   person interviewed may have counsel present.

13        The Bureau is authorized by this Order to use all other lawful means,

14   including posing, through its representatives, as consumers, suppliers, or other

15   individuals or entities, to Settling Defendants or any individual or entity affiliated

16   with Settling Defendants, without the necessity of identification or prior notice.

17   Nothing in this Order limits the Bureau's lawful use of compulsory process,

18   pursuant to 12 C.F.R. § 1080.6.

19                                   **XVI.**

20                   **RETENTION OF JURISDICTION**

21        **IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for

22   purposes of construction, modification, and enforcement of this Order.

23

24                                   **XVII.**

25        **IT IS FURTHER ORDERED** that pursuant to Fed. R. Civ. P. 54(b), there is no

26   just reason for delay, and the Clerk of the Court shall immediately enter this Order as a

27   final order.

28                                     25

1

**SO STIPULATED:**

2

3   KENT MARKUS
    Enforcement Director

4

5   _____        Date  1/25/13
    Laura Schneider

6   Crystal F. Sumner

7   James Meade

8   Attorneys for Plaintiff

9   Consumer Financial Protection Bureau

10

11  _____        Date  1/22/13
    Abraham Michael Pessar

12

13  _____        Date  1/22/13
    Abraham Michael Pessar, Division

14  One Investment & Loan, Inc.,

15

16  _____        Date  1/22/13
    Abraham Michael Pessar as

17  owner/manager of
    Processing Division, L.L.C.

18

19  _____        Date  1/22/13
    Edwin C. Schreiber, Esq.

20  Counsel for Abraham Michael Pessar,

21  Division One Investment & Loan, Inc., and
    Processing Division, L.L.C.

22

23  **IT IS SO ORDERED**, this _1st_ day of _February_, 2013, at _____ o'clock ___.m.

24

25  _____

26  United States District Judge

27

28

26