Gary Kurtz, Esq. SBN 128295
**Law Office of Gary Kurtz,** A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364
Telephone: 818-884-8400
Telefax: 818-884-8404
E-Mail: gary@garykurtzlaw.com

Attorneys for Chance E. Gordon
and The Gordon Law Firm, P.C.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>CHANCE E. GORDON, et. al.,<br><br>Defendants. | Case No.: CV12-6147 RSWL(MRWx)<br><br>GORDON DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION<br><br>Date: June 17, 2013<br>Time: 1:30 p.m.<br>Place: Courtroom 15<br>Hon. Percy Anderson |

///

///



Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

## TABLES

### Table of Contents


| Section | | Page |
|---|---|---|
| I. | Introduction | 1 |
| II. | Legal Standards | 2 |
| III. | Plaintiff Does Not Have Legal Authority To Prosecute This Action | 4 |
| IV. | Plaintiff Has Not Established Elements Necessary For Summary Adjudication Of Counts I to III Because It Cannot Prove Any Of The Alleged Misstatements Was Objectively Likely To Misled Consumers | 7 |
| | A. Disputes Exist Regarding Gordon's Liability For Advertising | 7 |
| | B. Disputes Exist Regarding Alleged Deceit | 9 |
| | C. Consumers Acting Reasonably Under The Circumstances Would Not Have Been Deceived | 11 |
| V. | Plaintiff Has Not Established Elements Necessary For Summary Adjudication Of Counts IV to VII, Which Are Based On Regulation O | 14 |
| VI. | Requested Remedies Are Not Proven Without Material Dispute | 18 |
| | A. Plaintiff Has Not Justified Summary Judgment For $11,403,338.63 | 19 |
| | B. Plaintiff Has Not Justified Summary Judgment For Injunctive Relief | 21 |
| VII. | Conclusion | 22 |

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

## Table of Authorities



| Case | Page |
|---|---|
| *American Home Assurance Co. v. Phineas Corp.*, 347 F. Supp.2d 1231 (M.D. Fla 2004) | 12 |
| *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986) | 2,3 |
| *Birdsong v. State Farm*, 1997 U.S. Dist. LEXIS 18504 (N.D. Cal. 1997) | 3 |
| *British Airways Board v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978) | 2 |
| *Burden v. Check Into Cash of Kentucky*, LLC, 267 F.3d 483 (6th Cir. 2001) | 12 |
| *Canning v. N.L.R.B.*, 705 F.3d 490 (D.C. Cir. 2013) | 4 |
| *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986) | 3 |
| *Employee Painters Trust v. J & B Finishes*, 77 F.3d 1188 (1996) | 12 |
| *FTC v. Evans*, 775 F.2d 1084, 1087 (9th Cir. 1985) | 21 |
| *FTC v. John Beck Amazing Profits, LLC*, 865 F.Supp.2d 1052 (2012) | 3 |
| *FTC v. Medlab, Inc.*, F.Supp.2d 1068 (N.D. Cal. 2009) | 21 |
| *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) | 7 |
| *Grey v. American Management Services*, 204 Cal.App.4th 803, 807 (2012) | 15 |
| *Hall v. Burger King Corp.*, 912 F.Supp. 150 (S.D. Fla. 1995) | 12 |
| *In re Estate of Wilson*, 64 Cal.App.3d 786, 801 (1977) | 14,16 |
| *In re Hyun-Bok Chung*, 43 B.R. 368 (USBC Hawaii 1984) | 12 |
| *In re Marriage of Brooks*, 169 Cal.App.4th 176, 184 (2009) | 13,14,16 |
| *Lendino v. Trans Union Credit Information Co.*, 970 F.2d 1110 (2nd Cir. 1992) | 3 |

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364


| Case | Page |
| --- | --- |
| *Lonely Maiden Productions, LLC v. Goldentree Asset Management, LP,* 201 Cal.App.4th 368, 376 (2011) | 15 |
| *Lopez v. Corporation Azucarera de Puerto Rico,* 938 F.2d 1510 (1st Cir. 1991) | 2 |
| *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 89 L.Ed.2d 538, 106 S.Ct. 1348 (1986) | 3 |
| *N.L.R.B. v. New Vista Nursing and Rehabilitation,* 2013 WL 2099742 (3d Cir. 2013) | 4 |
| *O'Neill v. N.A.S.D, Inc.*, 667 F.2d 804 (9th Cir 1982) | 12 |
| *Operating Engineers Pension Trust v. Gilliam,* 737 F.2d 1001 (9th Cir. 1984) | 12 |
| *Plaza Freeway Ltd. Partnership v. First Mountain Bank,* 81 Cal.App.4th 616 (2000) | 13,16 |
| *Rosenfeld v. JP Morgan Chase Bank, N.A.,* 732 F.Supp.2d 952 (N.D. Cal. 2010) | 12 |
| *SEC v. Eurobond Exchange,* 13 F.3d 1334, 1339 (9th Cir. 1994) | 8 |
| *SEC v. Gowrish,* 2011 WL 2790482 (N.D. Cal. 2011) | 19,20 |
| *SEC v. JT Wallenbrock*, 440 F.3d 1109 (9th Cir. 2006) | 19,20 |
| *SEC v. Platforms Wireless Inter. Corp.,* 617 F.3d 1072, 1076 (9th Cir, 2010) | 19 |
| *Sischo-Nownejad v. Merced Community College District,* 934 F.2d 1104, 1111 (9th Cir. 1991) | 3 |
| *Stickrath v. Globalstar, Inc.,* 527 F.Supp.2d 992 (N.D. Cal. 2007) | 14 |
| *Trautman v. Southland Corp.,* 842 F.Supp. 386 (N.D. Cal. 1993) | 14 |
| *Upton v. Tribilcock,* 91 U.S. 45, 50, 23 L.Ed. 203 (1875) | 11 |
| *Visto Corp. v. Sproquit Technologies, Inc.,* 413 F.Supp.2d 1073 (N.D. Cal. 2006) | 12 |


///
///
///

| Statute/Regulation | Page |
|---|---|
| 12 CFR § 1015, et seq. | 14 |
| 12 CFR § 1015.2 | 15 |
| 75 Fed.Reg 75092-01 at 75102 (December 2010) | 18 |
| 12 U.S.C. § 5531 | 9,10 |
| 12 U.S.C. § 5565(a)(2)(D) | 19 |
| California Civil Code § 1625 | 15 |
| California Civil Code § 1856(a) | 15 |
| California Evidence Code § 622 | 13,16 |


Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

## I. Introduction

At relevant times Defendant Gordon was an attorney practicing law in California. In early 2009, before any of the legislation at issue, Gordon's law practice accepted work to assist distressed homeowners. At that time, Gordon charged for all of his services. Shortly thereafter, state and federal laws and rules were implemented regarding the practice in the industry. In order to avoid violation of these laws, Gordon dramatically altered his practice to comply with the law.[1] He implemented a pay program that involved pre-litigation services then products, which was permitted because of the nature of the work. He also implemented a pro-bono (free) program to assist with loan modification services, which was permitted because he received on consideration. These programs were very successful in assisting homeowners.

Gordon's opposition here will target specific defects and will not attempt to address all issues raised by Plaintiff. Plaintiff has a significant burden in order to justify summary judgment. To defeat this motion, and to prevail at trial, Gordon's burden is significantly less daunting. He must merely defeat Plaintiff's assertion of standing and/or one essential element in each Count of the complaint. Surgical strikes on key defects in Plaintiffs case are sufficient for Gordon to prevail.

---

[1] Plaintiff attempts to make this seem sinister when, in fact, Gordon acted responsibly. Altering business practices to comply with the law should be commended, not condemned. Gordon's efforts should be viewed as a good faith attempt to comply with the new laws while still assisting distressed homeowners, not an effort to circumvent them.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Plaintiff's summary judgment motion fails for several reasons, including the reasons set forth in Gordon's summary judgment motion.

- Plaintiff has no standing to pursue this action based on OIG directives, which renders the instant motion moot;
- Plaintiff cannot succeed on any of the deceptive advertising claims (Counts I to III) because the written agreements all consumers signed make it impossible for Plaintiff to satisfy the element that the advertising "is likely to mislead consumers acting reasonably under the circumstances"; and
- None of the Regulation O claims apply to Gordon because of the structure implemented to comply with the MARS laws.
- Disputed issues of material fact involved regarding the advertising issues **and** whether Gordon has any liability even if any advertising was improper.
- Finally, if the Court gets as far as remedies, there is a failure of proof.

## II. Legal Standards

Plaintiff has the initial burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986); *British Airways Board v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978). If Plaintiff fails to satisfy the initial burden, then this motion should be denied. *See Lopez v. Corporation Azucarera de Puerto Rico*, 938 F.2d 1510 (1st Cir. 1991).

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

If Plaintiff satisfies its initial burden, then Gordon must establish a genuine issue of material fact. A factual dispute is genuine if the evidence is such that a rational trier of fact could resolve the dispute in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Even after *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986), courts in this circuit "require very little evidence to survive summary judgment." *Sischo-Nownejad v. Merced Community College District*, 934 F.2d 1104, 1111 (9th Cir. 1991). The adjudication of a summary judgment motion is not a "trial on affidavits." *Birdsong v. State Farm*, 1997 U.S. Dist. LEXIS 18504 (N.D. Cal. 1997). Summary judgment may not be used to resolve credibility issues. *Lendino v. Trans Union Credit Information Co.*, 970 F.2d 1110 (2nd Cir. 1992). Factual inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L.Ed.2d 538, 106 S.Ct. 1348 (1986).

Accordingly, Plaintiff's mountain of paper cannot be weighed at this process. The question is whether there are disputed material facts exist, not how many witnesses line up on each side of the dispute. The question is whether Defendants present evidence to create a triable issue of fact on at least one material element of Plaintiff's case. *See FTC v. John Beck Amazing Profits, LLC*, 865 F.Supp.2d 1052 (2012).

///

///

///

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

**III. Plaintiff Does Not Have Legal Authority To Prosecute This Action**

Gordon asks this Court to incorporate his detailed arguments and evidence presented with his summary judgment motion. The July 15, 2011, report of the Office of Inspector General, which was entitled "Review of CFPB Implementation Planning Activities" (hereinafter "OIG Report") explains that "As mandated by the Dodd-Frank Act, a presidentially appointed, Senate-confirmed director is to lead the agency. A CFPB Director has not yet been appointed." Gordon's MSJ focuses on the constitutional defect in Mr. Cordray's appointment.[2] In addition to, and independent of, that defect, the CFPB has **never** had a "Senate-confirmed director." Thus, the OIG Report, at page 4, strips Plaintiff of the authority to file and advance the instant action.

The OIG's rationale is simple. Once a legitimately confirmed director is in place, the CFPB answers to no one except the Board of Directors of the Federal Reserve. That director than has extraordinary power for a period of five years. At the end of that five years, another director may only be appointed through the same process; 1) Nominated by the President, and, 2) confirmed by the Senate. The logic of the federal reserve in putting the foregoing requirements in place is in order to insure that the CFPB activities are derived as a result of the democratic process and that its director is appointed through a system of checks and balances.

Requiring Senate Confirmation ensures that each of the 50 states, through their two duly elected senators, has input and a voice in how a federal agency,

---

[2] The recent cases of *N.L.R.B. v. New Vista Nursing and Rehabilitation*, 2013 WL 2099742 (3d Cir. 2013) and *Canning v. N.L.R.B.*, 705 F.3d 490 (D.C. Cir. 2013) explain why the appointment was unconstitutional.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

whose conduct could very well materially affect the public. Thus, as a result of the President appointing a director without the director being approved by the Senate, all Americans, whose interests, businesses, and lives could materially be affected by the actions of the CFPB, are denied any input that would be expressed through their Senators.

The OIG implemented a "safety value" to protect the public from the CFPB exercising nearly unfettered authority without proper approval. This "safety value" expressly and unequivocally deprives the CFPB of any jurisdiction over non-banking entities absent a validly appointed director, and reserves jurisdiction in the FTC to continue to enforce actions against non-banking entities unless and until and validly appointed director was appointed to the CFPB.

These concerns have several repercussions for the instant matter, as follows:

First, separate from the *Canning* decision, the CFPB had no authority over Gordon's business because Cordray's appointment was in direct violation of the OIG directive, as it was done without Senate Confirmation.

Second, in the light of the above, the CFPB **knew** (or at least should have known), that they did not have jurisdiction to file the underlying action against Gordon and his office. Based upon this knowledge, and for sake of argument, assuming that they had a good faith belief that Gordon was harming the public, the CFPB was obligated to turn over the action FTC and defer to the FTC as to whether a prosecution would be undertaken.

Third, assuming arguendo that the CFPB believed in good faith that the appointment of Cordray was valid, the *Canning* decision should have put them on notice that it was not. At this point, they could have dismissed the instant case

urged the FTC to file a parallel action and thus jurisdiction would not be an issue. However, no parallel action was filed.

Forth, the foregoing facts make it apparent that the action against Gordon business was completely political. Gordon became the sacrificial lamb, with the CFPB hoping that if it took out a "loan modification scam", it would please enough people in the Senate so that Richard Cordray could eventually obtain Senate confirmation. This conclusion is supported by several facts, namely, (a) the CFPB could have sent a NORA letter but did not; (b) the CFPB could have conducted an audit but did not, and, (c) instead of doing either of the foregoing, they obtained a secret restraining order and descended on Gordon's business like 1920s prohibition agents, driving Gordon of his assets, income, records from which to defend himself, and funds from which to mount a properly funded defense.

Fifth, the CFPB is now attempting to minimize its power grab and detract the Court away from the foregoing facts by trying to paint Gordon as a scam artist. Their actions in doing so should not be well taken because what they are arguing for is in direct contravention of our democratic process and our system of checks and balances. Separate from this single prosecution, denying our MSJ would have broad implications in that an agency operating in direct contravention of the democratic process and our system of checks and balances could continue to ransack businesses.

The instant action was *ultra vires* from the start, and it remains *ultra vires*. Thus, the only lawful act available to this Court would be to deny Plaintiff's MSJ, dismiss the instant action and schedule a hearing for Rule 11 sanctions against the CFPB (not the individual lawyers).

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

## IV. Plaintiff Has Not Established Elements Necessary For Summary Adjudication Of Counts I to III Because It Cannot Prove Any Of The Alleged Misstatements Was Objectively Likely To Misled Consumers

In a similar context, "'unfair or deceptive acts or practices' have been defined as 'An act or practice is deceptive if 'first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material.'" *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009). Plaintiff's moving papers accept and adopt this standard.

### A. Disputes Exist Regarding Gordon's Liability For Advertising

As set forth in Mr. Gordon's declarations, he was not directly involved with the advertising and marketing efforts that Plaintiff challenges in this matter. Plaintiff attempts to tie him into that conduct by stating a common enterprise theory. Disputes exist regarding that theory.

There are three separate approaches in proving a "common enterprise." The 9th circuit follows "The Narrow Vertical Approach." In ruling on whether a "common enterprise" exists, the alleging party MUST SHOW that the "fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment...IT IS NOT NECESSARY THAT THE FUNDS OF INVESTORS ARE POOLED, INSTEAD IT MUST BE SHOWN THAT THE FORTUNES OF THE INVESTORS ARE LINKED WITH THOSE OF THE PROMOTERS, THEREBY ESTABLISHING A COMMON ENTERPRISE. Under this view, the test is satisfied if the promoter and the investor are both exposed to



Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

risk and the profits and losses of investor and promoter are correlated. *SEC v. Eurobond Exchange*, 13 F.3d 1334, 1339 (9th Cir. 1994).

The evidence thus far has shown that there was no correlation between the profits and losses of Gordon's businesses and Pessar's separate businesses. All the Bureau has been able to show is that money from Gordon's account was transferred to Pessar's. Those funds were compensation for Pessar's handling of Human Resource and Accounting issues. Moreover, the evidence has shown that Pessar was doing business with other lawyers, companies, and had a real estate company.

The evidence has also shown that whether Gordon was operating at a profit or loss was irrelevant as it pertained to compensating Pessar for his human resource and accounting duties. Whether Gordon was making money or losing money, the funds had to paid irrespective in order for that part of Gordon's business to function. In addition, Gordon had a separate litigation practice, and also worked through the d.b.a. of "Resolution Law Center" in developing his "Mediation/Arbitration Program". Also, the fact that Gordon would meet with Pessar regularly is not indicative of a "common enterprise", but rather a normal function of a legitimate business when someone has hired another to work within their business' infrastructure.

///

///

///

Law Office of Gary Kurtz, A PLC
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

**B. Disputes Exist Regarding Alleged Deceit**

12 U.S.C. § 5531 is the governing statute for "Prohibiting unfair, deceptive, or abusive acts or practices." Curiously, deceptive is not defined, but unfair and abusive are defined as follows:

> (c) Unfairness
>
> (1) In general
>
> The Bureau shall have no authority under this section to declare an act or practice in connection with a transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service, to be unlawful on the grounds that such act or practice is unfair, unless the Bureau has a reasonable basis to conclude that--
>
> (A) the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers; and
>
> (B) such substantial injury is not outweighed by countervailing benefits to consumers or to competition.
>
> (2) Consideration of public policies
>
> In determining whether an act or practice is unfair, the Bureau may consider established public policies as evidence to be considered with all other evidence. Such public policy considerations may not serve as a primary basis for such determination.
>
> (d) Abusive
>
> The Bureau shall have no authority under this section to declare an act or practice abusive in connection with the provision of a consumer financial product or service, unless the act or practice--
>
> (1) materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service; or
>
> (2) takes unreasonable advantage of--
>
> (A) a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service;

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

> (B) the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; or
>
> (C) the reasonable reliance by the consumer on a covered person to act in the interests of the consumer.

In reviewing this statute, Gordon's actions cannot be considered "unfair" or "abusive" and, therefore, Plaintiff cannot obtain summary judgment.

My actions were not "unfair" as they were not likely to cause substantial injury to consumers which were not substantially avoidable by consumers. The foregoing position is supported by the fact that; (a) the consumers signed an integrated contract which by signing they acknowledged their understanding of that contract, (b) Gordon's office fully performed under the contracts thereby yielding useful custom legal products and a success rate of over 80% in obtaining modifications, and, (c) separate from the foregoing, any harm was "substantially avoidable" through consumers simply paying their mortgage or giving the property back to the bank.

The main crux of the CFPB's argument is that we were leading people to believe that Defendants were associated with HUD do to; 1) displaying the Equal Opportunity House, 2) Having a D.C. return address, and, 3) language on the flyer explaining program eligibility/ As reflected on HUD's own website, anyone can use the Equal Opportunity House, furthermore, the CFPB can point to no law which has allegedly been violated through having a D.C. return address or the flyer language, other than it is "deceptive", which is an undefined term.

///

///

///

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

### C. Consumers Acting Reasonably Under The Circumstances Would Not Have Been Deceived

Plaintiff overstates the significance of the purported misrepresentations. Most of the evidence is inadmissible hearsay, unauthenticated documents, statements in violation of the parol evidence rule, and statements not necessarily related to Gordon. The volume of material filed and short time for a sole practitioner to respond prevents specific objections. For the purposes of the instant motion, however, Gordon's focus is on the second element.

This case differs from most (and all reviewed by counsel) because Gordon required a secondary level of protection for consumers and for himself, namely the written agreements he prepared, modified as needed, and required for each consumer to whom he provided services of products. Plaintiff has presented various versions of the written agreements in the volumes of material filed with its motion, and Gordon has filed representative samples with his summary judgment motion. It is well settled that the consumers signing the agreements are deemed to have read and understood them. Over 100 year ago, the Supreme Court made the following pronouncement in *Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L.Ed. 203 (1875):

> It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission

That remains the law to follow. *See Burden v. Check Into Cash of Kentucky*, LLC, 267 F.3d 483 (6th Cir. 2001); *Operating Engineers Pension Trust v. Gilliam*, 737 F. 2d 1001 (9th Cir. 1984); *O'Neill v. N.A.S.D, Inc.*, 667 F.2d 804 (9th Cir 1982); *Employee Painters Trust v. J & B Finishes*, 77 F.3d 1188 (1996); *Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732 F.Supp.2d 952 (N.D. Cal. 2010); *American Home Assurance Co. v. Phineas Corp.*, 347 F. Supp.2d 1231 (M.D. Fla 2004); *Hall v. Burger King Corp.*, 912 F.Supp. 150 (S.D. Fla. 1995); *In re Hyun-Bok Chung*, 43 B.R. 368 (USBC Hawaii 1984). See generally *Visto Corp. v. Sproquit Technologies, Inc.*, 413 F.Supp.2d 1073 (N.D. Cal. 2006)(patent claim).

These written agreements assured that the consumers knew precisely what they were getting in total, including what they were getting for a fee and what they were getting for free. These written agreements assured that any overstatements or misstatements made by Pessar's staff were corrected before money was paid and/or negotiated. These written agreements assured that Gordon and consumers would be protected from human error and greed that may be associated with Pessar's commission based sales force. These written agreements **should** have been sufficient to discourage Plaintiff from initiating the present action, which has destroyed Gordon's custom legal products business and his law firm and has rendered him indigent and homeless. These written agreements should be sufficient to deny Plaintiff's request for summary judgment and, instead, grant Gordon's summary judgment motion.

Although Plaintiff argues that an enterprise theory renders Gordon responsible and liable for the misstatements of Pessar's advertising and sales staff,

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

that does not address the second element. The consumers who are attracted to contact Pessar by his advertisements and are matched to one of Gordon's businesses are **all** presented with written agreements that identify the scope and limitations of what Gordon offered to them. No work was done without the consumer signing the Pre-Litigation Claims Program agreement as it evolved. After advance fees were prohibited, first on the state and then on the federal level, no loan modification was done unless a consumer signed a pro-bono agreement.

Any uncertainty, confusion, or misstatements were corrected by the written agreements, which described service and products that were lawfully offered on the stated terms. This defeats the "likely to mislead consumers acting reasonably under the circumstances" element because the signatories to the contracts cannot even be heard to contradict the agreed upon terms. The terms of the written agreements govern the relationship between the parties thereto pursuant to the doctrine of estoppel by contract. That doctrine is codified in the California Evidence Code § 622, which states: "The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration."

That Evidence Code section and the common law doctrine upon which it is based both provide for a **conclusive presumption** that the facts contained in the contract are true. *See Plaza Freeway Ltd. Partnership v. First Mountain Bank,* 81 Cal.App.4th 616 (2000). As between the parties to a contract, "the doctrine of estoppel by contract" stands for the proposition that "a party to a contract is generally estopped to deny essential facts recited therein." *In re Marriage of*

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

*Brooks*, 169 Cal.App.4th 176, 184 (2009). That doctrine has also been interpreted to mean that without credible evidence that an agreement "was altered or rescinded by the parties, the terms of the contract are binding on the parties and their successors." *In re Estate of Wilson*, 64 Cal.App.3d 786, 801 (1977).

In addition, many of the purported representations are non-actionable "puffery." The distinction was described in *Stickrath v. Globalstar, Inc.*, 527 F.Supp.2d 992 (N.D. Cal. 2007), were the court applied the standard under California law and stated: "'Advertisements that amount to 'mere' puffery are not actionable because no reasonable consumer relies on puffery.' [citations omitted] Factual representations, however, are actionable. [citation omitted].' Most of the statements at issue fit within this category of "puffery" and are not actionable.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

## V. Plaintiff Has Not Established Elements Necessary For Summary Adjudication Of Counts IV to VII, Which Are Based On Regulation O

Counts IV through VII, inclusive, of the complaint assert different claims under Regulation O, which is codified 12 CFR § 1015, et seq. Summary adjudication of these counts fail on a macro and micro level. Gordon designed a program to assist homeowners that was Regulation O compliant. He did this by creating two separate programs for two separate purposes. He protected consumers and himself by requiring the execution of unambiguous, easy to understand, contracts for each of the two programs. Consumers were protected because the agreements expressly set forth what services or products they where buying and what services they were receiving for free. Gordon protected himself

by creating a presumptively valid "paper-trail" of what services (and later products) he provided for a fee and what services he provided for free.

Plaintiff concedes that Counts IV to VII only apply **if** Gordon was a *Mortgage Assistance Relief Service Provider* as defined by 12 CFR § 1015.2. That definition requires that they show he "provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service" "in exchange for consideration." Pursuant to fully integrated contracts, the pay program did not include any of the many services or items listed in 12 CFR § 1015.2., and the program that did include services or items listed in 12 CFR § 1015.2 provided that for free. At a very minimum, there are factual disputes on whether Regulation O applies to Gordon,

Plaintiff challenges this exclusion by labeling the free program "a sham 'pro bono program' to avoid the advance fee prohibition of Regulation O." Plaintiff relies on pre-contract statements made in the context of Pessar's marketing in support of that accusation. Those arguments may not be considered. The parol evidence rule excludes consideration of that evidence in the first place. *See* California Civil Code §§ 1625, 1856(a); *Masterson v. Sine*, 68 Cal.2d 222, 225 (1968); *Lonely Maiden Productions, LLC v. Goldentree Asset Management, LP*, 201 Cal.App.4th 368, 376 (2011); *Grey v. American Management Services*, 204 Cal.App.4th 803, 807 (2012); *see also Trautman v. Southland Corp.*, 842 F.Supp. 386 (N.D. Cal. 1993).

The statutory language "that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following [long list of

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Law Office of Gary Kurtz, A PLC
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

items]" cannot be read too broadly. At the extreme, a telephone service provider that facilitates telephonic communication between consumer and lender, or an internet service provider that facilitates email communications between consumer and lender, or a car manufacturer that provides a vehicle necessary for a consumer to drive to his bank to sign modification documents could potentially be found to "assist the consumer," for example "(2) Negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees." That expansive reading of the statute would be absurd, and no court would permit the CFPB to proceed against Verison, Time-Warner Cable, or Ford Motor Company for providing a Mortgage Assistance Relief Service when they sell cell phone service, internet access, or automobiles. The same is true in the instant case.

The issue is not whether the pay program could aid the free program or whether the two programs "were inextricably tied" to each other. While Gordon recognized the obvious, namely a bank fearful of liability may attempt to buy off a claim with a loan modification, acknowledging that reality does not alter the objective of the pay program or its legitimacy. The doctrine of estoppel by contract precludes the customers from challenging that money was paid for the pre-litigation program that does not include any mortgage assistance relief and nothing was paid for the free loan modification service. *See* California Evidence Code § 622; *Plaza Freeway Ltd. Partnership v. First Mountain Bank*, 81 Cal.App. 4th 616 (2000); *in re Marriage of Brooks*, 169 Cal.App.4th 176, 184 (2009); *in re Estate of Wilson*, 64 Cal.App.3d 786, 801 (1977).

The well seasoned doctrines of estoppel by contract and the parol evidence rule function to protect the agreements and expectations set forth in fully integrated writings, as we have in this case. The legal principals are ancient, are taught in law school, and are essential to commerce. These doctrines predate the mortgage crisis and remedial laws and regulations. These doctrines will continue to exist long after the end of the mortgage crisis and the need for remedial laws and regulations. Well seasoned and established legal principals should not be ignored because it would be politically expedient for a newly formed governmental agency.

Gordon had every right to rely on the doctrines of estoppel by contract and the parol evidence rule when planning a program to comply with Regulation O. He should not be contemned, his life further ruined, and judgement issued against him because a federal agency wants to ignore these doctrines.

Finally, in a clever bit of sophistry, Plaintiff would have this Court ignore age old legal principals because the FTC, its predecessor agency, interprets the MARS act in a way they suggests favors their motion. Even if we were to accept the concept that the fox may watch the chicken coop, that makes Plaintiff's motion even more suspect. Upon the inception of the MARS regulations, Gordon's pay program started to sell custom legal products for homeowners to use. The issue of products was addressed by the FTC as follows:

> One commenter recommended that the Commission add the word "product" to the proposed definition "mortgage assistance relief service." The commenter recommended this addition to ensure that providers cannot evade the Rule by claiming to sell a product (e.g., software, books, CDs, or other tangible materials to help consumers avoid foreclosure) rather than a service.

The qualified written request, demand letter, and draft complaint that Gordon sold all fit within the concern to make sure "that providers cannot evade the Rule by claiming to sell a product."

The FTC specifically addressed the issue of products as follows:

> The Commission declines to include products in the definition of MARS in the Final Rule. The record demonstrates that providers of services to help consumers modify their mortgages and avoid foreclosure often engage in unfair and deceptive practices; in contrast, neither the Commission's law enforcement experience nor the rulemaking record show that those who sell products for mortgage assistance relief are engaged in the same types of conduct.

75 Fed.Reg 75092-01 at 75102 (December 2010). Despite the FTC's clear and unambiguous refusal to include products in scope of the MARS regulations, even at the risk of allowing providers to "evade the Rule by claiming to sell a product," the CFPB is prosecuting Gordon for selling products. Because the FTC **does not include** products as covered by Regulation O, the CFPB should not be allowed to proceed against Gordon for selling his custom legal products.

## VI. Requested Remedies Are Not Proven Without Material Dispute

Gordon suggests that this Court need not reach the issue or remedies because Plaintiff has not demonstrated the elements necessary to establish liability on any of the asserted theories. Notwithstanding the liability positions, it would be irresponsible to ignore the triable issues of fact concerning remedies.

///

///

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

### A. Plaintiff Has Not Justified Summary Judgment For $11,403,338.63

Plaintiff seeks disgorgment, which is available pursuant to 12 U.S.C. § 5565(a)(2)(D). From this statutory authority, Plaintiff makes a factual, legal and causal leap of faith to seek a judgment of $11,403,338.63. Plaintiff has "the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment." *SEC v. Gowrish*, 2011 WL 2790482 at *7 (N.D. Cal. 2011)(citing *SEC v. Platforms Wireless Inter. Corp.*, 617 F.3d 1072, 1076 (9th Cir, 2010)). The facts presented do not justify that or any specific number, so summary judgment cannot be granted.

The standards for determining the amount of disgorgement refer to "ill gotten gains," "funds illegally taken from the victims," and "profits causally connected to the violation." *SEC v. JT Wallenbrock*, 440 F.3d 1109, 1113-14 (9th Cir. 2006). From the consumer perspective, the Plaintiff's evidence **does not** distinguish between (a) self professed victims and self professed satisfied consumers;(b) people who relied the allegedly illegal advertising and people who understood exactly what they were getting; and (c) people who used the custom legal products and those who did not. From the economic perspective, Plaintiff's evidence **does not** distinguish between money spent on people who were ultimately satisfied with what they received and money spent on people who were unsatisfied. From a remedies perspective, money spent to recruit and service the needs of satisfied consumers should not be the subject of disgorgement or restitution.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

The *Wallenbrock* Court explained a fact situation relevant to the instant matter, as follows:

> For example, if an investor buys stock through a licensed broker who then skims off some or all of the profits generated by the stock, either through dividends or upon resale, the broker is enriched by the amount skimmed. Under some circumstances, the broker might be entitled to offset expenses customarily incurred in the purchase and sale of such stock if the investor would have had to pay for such expenses in any legitimate transaction.

*JT Wallenbrock*, 440 F.3d at 1114. Thus, disgorgement of all collected funds would not be appropriate if the major issue is that a fee was taken before rather than after a successful loan modification. This distinction requires proof that is not present in Plaintiff's summary judgment motion, meaning a monetary judgment is not justified.

Moreover, the presented facts do not justify any monetary award against Gordon. The *Gowrish* court explained that "where one party to a fraudulent scheme has an agreement with the principal to participate in the scheme but retain only a small portion of the proceeds, it is an abuse of discretion to require that party to disgorge all proceeds." 2011 WL 2790482 at *7 (citing *Hateley v. SEC*, 8F.3d 633, 656 (9th Cir. 1993). Here, Pessar was in charge of the advertising that is the subject of the first three causes of action, most of the money went to Pessar, who used it as he sought fit for advertising, compensation of customer service representatives, compensation of processors, and his own gain. Plaintiff already had a judgment against Pessar for nearly everything it claims is owed. When we consider the number of satisfied consumers (even assuming the Receiver's

artificially depressed statistic), no additional money is needed for disgorgement and restitution.

Refunds have already been provided from Gordon's share. That amount should be subtracted from any disgorgement award. *See FTC v. Medlab, Inc.*, F.Supp.2d 1068, 1083 (N.D. Cal. 2009).

Because there are many (the number or percent is disputed) customers who contracted for products and/or services, received the products and/or services, and were satisfied with the products and/or services they received. Frequently this involved preventing foreclosures and modifying lenders' expectations to keep people in their homes.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

### B. Plaintiff Has Not Justified Summary Judgment For Injunctive Relief

In *FTC v. Evans*, 775 F.2d 1084, 1087 (9th Cir. 1985) the Court explained:

> As a general rule, "[p]ast wrongs are not enough for the grant of an injunction"; an injunction will issue only if the wrongs are ongoing or likely to recur. [citations omitted] We therefore consider whether Evans' alleged violations have completely ceased; if they have, we consider whether they are likely to recur.

In addition, sincere assurances against future violations are relevant in weighing whether or not to issue an injunction. *Gowrish, supra.*, 2011 WL 2790482 *6. In this case, Gordon's lack of desire and ability to assist distressed homeowners in the future creates a factual dispute sufficient to deny summary judgment including an injunction.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

## VII. Conclusion

For the reasons set forth above, the instant motion should be denied in its entirety.

Respectfully presented,
**LAW OFFICE OF GARY KURTZ**
A Professional Law Corporation

Dated: June 3, 2013

By: *Gary Kurtz*

Gary Kurtz, Esq. Attorney for Defendants Chance E. Gordon and The Gordon Law Firm, P.C.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

**Certification**

I hereby certify that, on May 20, 2013, a copy of the foregoing GORDON DEFENDANTS' POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES OR CLAIMS was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

Dated: June 3, 2013

Gary Kurtz

Gary Kurtz