KENT MARKUS, OH Bar #16005
Enforcement Director
LAURA SCHNEIDER, NY Bar Reg. #2715449
(Phone: (202) 435-7311)
(Email: Laura.Schneider@cfpb.gov)
CRYSTAL R. SUMNER, CA Bar #261435
(Phone: (202) 435-7549)
(Email: Crystal.Sumner@cfpb.gov)
JAMES MEADE, DC Bar #414732
(Phone: (202) 435-9202)
(Email: James.Meade@cfpb.gov)
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

ETHAN P. DAVIS, NY Bar Reg. #4731055
(Phone: (202) 514-9242)
(Email: ethan.p.davis@usdoj.gov)
BRADLEY H. COHEN, DC Bar #495145
(Phone: (202) 305-9855)
(Email: bradley.cohen@usdoj.gov)
BENJAMIN L. BERWICK, MA Bar #679207
(Phone: (202) 305-8573)
(Email: benjamin.l.berwick@usdoj.gov)
TAMRA T. MOORE, DC Bar #488392
(Phone: (202) 514-8095)
(Email: tamra.moore@usdoj.gov)
Federal Programs Branch
U.S. Department of Justice, Civil Division
P.O. Box 883
Washington, DC 20044
Fax: (202) 616-8470

KENT KAWAKAMI, CA Bar #149803 – Local Counsel
(Phone: (213) 894-4858)
(Email: Kent.Kawakami@usdoj.gov)
United States Attorney's Office
Central District of California - Civil Division
300 North Los Angeles Street, Room 7516
Los Angeles, CA 90012
Fax: (213) 894-2380

Attorneys for Plaintiff
Consumer Financial Protection Bureau

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Consumer Financial Protection Bureau,
Plaintiff,
v.
Chance Edward Gordon, et al.,
Defendants.

Case No. CV12-6147-RSWL-MRW

**PLAINTIFF'S REPLY TO THE GORDON DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION OF THE ISSUES**

**Courtroom 15**
**Hon. Percy Anderson**

## TABLE OF CONTENTS

I. Introduction and Legal Standard ........................................................ 1
II. The Gordon Defendants' Unsupported Denials Are Insufficient To Demonstrate Any Genuine Issue Of Material Fact For Trial. ........................................ 2
III. Undisputed Facts Show That The Gordon Defendants Are Liable. ......................... 3
IV. Undisputed Facts Show That The Gordon Defendants Were Mortgage Assistance Relief Service Providers Covered By Regulation O. ....................................... 4
V. Undisputed Facts Show That The Gordon Defendants Violated The CFPA. .......... 6
VI. The Bureau's Requested Remedies Are Appropriate. ........................................ 7
VII. The Gordon Defendants' Appointment-Related Challenges Lack Merit. ............... 10

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. United States*, 52 Fed. Cl. 710 (Fed. Cl. 2002) .......... 10
*Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997) .......... 6
*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .......... 3
*CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339, 2005 WL 1130588 (C.D. Cal. Apr. 19, 2005) .......... 3
*Delaware Watch Co. v. FTC*, 332 F.2d 745 (2d Cir. 1964) .......... 3
*Floersheim v. FTC*, 411 F.2d 874 (9th Cir. 1969) .......... 6
*FTC v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451 (D. Md. 2004) .......... 4
*FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564 (7th Cir. 1989), cert. denied, 493 U.S. 954, 110 S. Ct. 366, 107 L. Ed. 2d 352 (1989) .......... 9
*FTC v. Braswell*, No. CV 03-3700 DT, 2005 WL 4227194 (C.D. Cal. Sept. 27, 2005) .......... 1
*FTC v. Bronson Partners, LLC*, No. 3:04cv1866, 2006 WL 197357 (D. Conn. Jan. 25, 2006) .......... 1
*FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048 (C.D. Cal. 2012) .......... 7, 8
*FTC v. Cyberspace.Com LLC*, 453 F.3d 1196 (9th Cir. 2006) .......... 7
*FTC v. Data Medical Capital, Inc.*, No. CV 99-1266, 2010 WL 1049977 (C.D. Cal. Jan. 15, 2010) .......... 3
*FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1 (1st Cir. 2010) .......... 7, 8
*FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp.2d 202 (D.Mass. 2009) .......... 8
*FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997) .......... 7, 8
*FTC v. Figgie Int'l*, 994 F.2d 595 (9th Cir. 1993) .......... 8, 9
*FTC v. Gill*, 71 F. Supp. 2d 1030 (C.D. Cal. 1999), *aff'd*, 265 F.3d 944 (9th Cir. 2001) .......... 7, 8, 9
*FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000) .......... 3, 4
*FTC v. Magui Publishers, Inc.*, No. 89–3818RSWL(GX), 1991 WL 90895 (C.D. Cal. Mar. 28, 1991) .......... 10

*FTC v. Medicor LLC*, 217 F. Supp. 2d 1048 (C.D. Cal. 2002) .......................................... 8
*FTC v. Minuteman Press*, 53 F. Supp. 2d 248 (E.D.N.Y. 1998) ..................................... 5, 7
*FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) ............................. 1, 2
*FTC v. QT, Inc.*, 512 F.3d 858 (7th Cir. 2008) ............................................................ 7
*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) ..................................................... 8, 9
*Harper v. Wallingford*, 877 F.2d 728 (9th Cir. 1989) ................................................... 1
*Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 239 F. Supp. 2d 1367 (C.I.T. 2002) ..... 11
*NLRB. v. New Vista Nursing and Rehabilitation*, --- F.3d ---, 2013 WL 2099742 (3d Cir. May 16, 2013) ................................................................................................. 12
*Noel Canning v. NLRB*, 705 F.3d 490 (D.C. Cir. 2013), *petition for cert. filed*, 81 U.S.L.W. 3629 (U.S. April 25, 2013) ........................................................................ 12
*Resort Car Rental System, Inc.v. FTC*, 518 F.2d 962 (9th Cir. 1975) ................................ 7
*Staebler v. Carter*, 464 F. Supp. 585 (D.D.C. 1979) ...................................................... 11
*Sunshine Art Studios, Inc. v. FTC*, 481 F.2d 1171 (1st Cir. 1973) .................................... 4
*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) ........................................................... 11
*United States v. Woodley*, 751 F.2d 1008 (9th Cir. 1985) ............................................... 11
*Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 118 Cal. Rptr. 2d 770 (2002) .............. 5

**Statutes**

12 U.S.C. § 5492(b)(2) ................................................................................................ 11
12 U.S.C. § 5565(a)(1) .................................................................................................. 8
28 U.S.C. § 133(a) ....................................................................................................... 11
5 U.S.C. App. § 4 ........................................................................................................ 10
Cal. Evid. Code § 622 (West) ......................................................................................... 5

**Rules**

Fed. R. Civ. P. 56(c) ...................................................................................................... 1
Fed. R. Civ. P. 56(e) .................................................................................................. 1, 3
Local Rule 56-2 ............................................................................................................ 1
Local Rule 56-3 ............................................................................................................ 1

**Regulations**

76 Fed. Reg. 43659 (July 21, 2011) .......... 6

Regulation O, 12 C.F.R. § 1015 .......... 4, 5, 6, 9

**Other Authorities**

Congressional Research Service, President Obama's January 4, 2012, Recess Appointments: Legal Issues, CRS Report R42323 (Jan. 23, 2012) .......... 11

Mortgage Assistance Relief Services Rule, Final Rule and Statement of Basis and Purpose, 75 Fed. Reg. 75092-01 (2010) .......... 5, 6

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Bureau's Memorandum or Bureau's Mem. | Plaintiff's Memorandum Of Points And Authorities In Support Of Motion For Summary Judgment Or In The Alternative Summary Adjudication Of The Issues Against Defendants Chance Edward Gordon And The Gordon Law Firm, P.C. (DE 144-1) |
| Defendants' Memorandum or Defs.' Mem. | Gordon Defendants' Memorandum Of Points And Authorities In Support Of Their Motion for Summary Judgment Or In The Alternative For Summary Adjudication Of Issues Or Claims (DE 139-1) |
| Bureau's Opposition or Bureau's Opp. | Plaintiff's Opposition To Motion For Summary Judgment Or In The Alternative For Summary Adjudication Of The Issues Of Defendants Chance Edward Gordon And The Gordon Law Firm, P.C. (DE 168) |
| Defendants' Opposition or Defs.' Opp. | Gordon Defendants' Opposition To Plaintiff's Motion For Summary Judgment Or In The Alternative For Summary Adjudication (DE 169) |
| Gordon Statement of Genuine Issues or Gordon SGI | Declaration Of Chance Gordon In Opposition To Plaintiff's Motion For Summary Judgment Or In The Alternative For Summary Adjudication Of Issues Or Claims (DE 170) |

## I. Introduction and Legal Standard

In their Opposition to the Bureau's Motion for Summary Judgment, the Gordon Defendants attempt to counter the Bureau's overwhelming evidence of their illegal activity by misstating the applicable law and by asserting, without evidentiary support, that material facts remain disputed. The Court should grant the Bureau's Motion for Summary Judgment on all counts because the Bureau has demonstrated through uncontroverted facts that it is entitled to judgment as a matter of law.[1]

To successfully oppose a motion for summary judgment, the non-moving party must set forth specific facts showing that a genuine issue remains for trial, and must support its opposition by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ."[2] "If a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c) [the court may, among other things,] consider the fact undisputed for purposes of the motion [and] grant summary judgment . . . ."[3] Thus, "mere disagreement or the bald assertion that a genuine issue of material fact exists [does not] preclude[] the use of summary judgment."[4]

Local Rules 56-2 and 56-3, as well as this Court's Scheduling Order, make clear that mere blanket assertions of disputed fact unsupported by evidence are insufficient. LR 56-3 states that if an opposing party fails to controvert material facts "by declaration or

---

[1] The Gordon Defendants contend that their practices should be viewed as a good faith attempt to comply with the applicable laws, *see* Defs.' Opp. at 1 n. 1, however, good faith does not immunize defendants from liability for violating consumer protection laws. *See FTC v. Braswell*, No. CV 03-3700 DT, 2005 WL 4227194, at *12 (C.D. Cal. Sept. 27, 2005); *FTC v. Bronson Partners, LLC*, No. 3:04cv1866, 2006 WL 197357, at *1 (D. Conn. Jan. 25, 2006).

[2] Fed. R. Civ. P. 56(c).

[3] Fed. R. Civ. P. 56(e).

[4] *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989) (citation omitted); *see also FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997) (defendant cannot rely on general denials, but must produce significant probative evidence demonstrating genuine issue of material fact for trial).

other written evidence. . . ," the Court "may assume that [those] material facts as claimed and adequately supported by the moving party are admitted to exist without controversy . . . ." Moreover, the Court's Scheduling Order prohibits argument in the required separate statement of uncontroverted facts and cautions that "blanket or boilerplate objections . . . will be disregarded and overruled."[5]

## II. **<u>The Gordon Defendants' Unsupported Denials Are Insufficient To Demonstrate Any Genuine Issue Of Material Fact For Trial.</u>**

The Gordon Defendants' statement of genuine issues ("Gordon SGI"), though untitled, begins at page 8 of the Declaration of Chance Gordon (DE 170) ("Gordon Declaration").[6] In spite of the Court's clear instructions in the Scheduling Order, the Gordon Defendants do not indicate, in most of their responses, whether they regard a material fact as disputed or undisputed, but instead offer unsupported legal argument, with occasional, unfounded, boilerplate objections. Careful inspection of the responses reveals that the Gordon Defendants do not present evidence to establish a genuine dispute of material facts,[7] but rely upon argument and Gordon's self-serving declaration, which is not sufficient to create a dispute.[8]

The Gordon SGI purports to object to phrasing or word choice in a number of the Bureau's UFs, but none of those objections raise a genuine issue of material fact that

---

[5] December 12, 2013 Scheduling Order (DE 82) at p. 3-5.

[6] The Gordon SGI tracks the Bureau's separate statement of uncontroverted facts, but among its many failings, neglects to number any facts beyond the first six. Accordingly, where we refer to specific items in the Gordon SGI, we include the relevant number of the Uncontroverted Fact ("UF") from the Bureau's Statement of Uncontroverted Facts, and the page number where the corresponding, unnumbered item appears in the Gordon SGI.

[7] The Gordon Defendants respond "undisputed" to more than 25% of the Bureau's UFs and provide argumentative responses that do not appear to dispute many of the other UFs.

[8] *See Publ'g Clearing House, Inc.*, 104 F.3d at 1171 ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.") (citation omitted).

would require a trial to resolve.[9] Moreover, the Gordon Defendants did not provide any grounds or authority for their objections. Their objections should therefore be disregarded and overruled, as per the Court's Scheduling Order, and the Court should consider the material facts in this matter undisputed and grant summary judgment on all counts, in accordance with Fed. R. Civ. P. 56(e).[10]

## III. <u>Undisputed Facts Show That The Gordon Defendants Are Liable.</u>

In their Opposition, the Gordon Defendants cursorily argue that the undisputed facts do not establish that they acted in a common enterprise with their co-defendants.[11] They cite no evidence, however, and cite the wrong legal standard. The sole case they rely upon discusses an analysis that is used to determine whether an investment contract is a "security" under the federal securities laws. Under the correct standard, the Court should consider the "pattern and frame-work of the whole enterprise"[12] and a variety of other factors, including: whether the dealings between the corporations are conducted at an arm's length; whether the members of the enterprise operate as a single economic entity; whether business is transacted through a maze of interrelated companies; evidence revealing that no real distinction exists between the corporate defendants; failure to observe corporate formalities; common control; sharing of office space or an address;

---

[9] For example, in dozens of instances, the Gordon SGI objects to the use of the word "operation" to describe Gordon's business. *E.g.*, Gordon SGI at pp. 13-19, 46-50, 52 (responding to UF nos. 35-40, 42-46, 48-51, 54-57, 61-62, 204-208, 211-213, 222, 225, 240-241). In other responses, the Gordon SGI objects "to the negative way this [UF] is phrased." Gordon SGI at pp. 28-29, 33 (responding to UF nos. 110-112 and 125). Another objection, in its entirety, is "This is taken out of context." Gordon SGI at p. 79 (responding to UF 339).

[10] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986) (Rule 56(e) "requires the nonmoving party to go beyond the pleadings and [to] designate 'specific facts showing that there is a genuine issue for trial.'").

[11] *See* Defs.' Opp. at 7-8.

[12] *See FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1201-02 (C.D. Cal. 2000) citing *Delaware Watch Co. v. FTC*, 332 F.2d 745, 746 (2d Cir. 1964); *CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339, 2005 WL 1130588, at *9 (C.D. Cal. Apr. 19, 2005); *FTC v. Data Medical Capital, Inc.*, No. CV 99-1266, 2010 WL 1049977, at *23 (C.D. Cal. Jan. 15, 2010).

product continuity; and work force continuity.[13] Undisputed evidence shows that Defendants operated as a classic common enterprise, commingling finances, using common facilities, sharing employees, sharing physical resources, and acting with a common, singular purpose to unlawfully obtain fees upfront for mortgage assistance relief services from financially distressed consumers.[14] Thus, the defendants are jointly and severally liable for their unlawful conduct.[15]

Moreover, the undisputed facts show that Defendant Gordon is liable for his participation in the deceptive acts and practices of Defendants. Indeed, Gordon had authority and control over the marketing and sale of his products and services, was fully aware of scripts and mailers being used to sell his products and services, and was involved in creating the websites that helped solicit consumers.[16]

## IV. Undisputed Facts Show That The Gordon Defendants Were Mortgage Assistance Relief Service Providers Covered By Regulation O.

The Gordon Defendants admit that they provided loan modification services to consumers, but claim that they are not covered by Regulation O because the upfront fee charged was not for loan modification services, but rather exclusively for "custom legal products."[17] But, the Gordon Defendants fail to dispute: (1) that sales representatives promised consumers loan modifications and then told them that they must pay all or a portion of an upfront fee before work would begin on the loan modification;[18] or (2) that sales representatives never mentioned that the loan modification services would be

---

[13] *See J.K. Publ'ns, Inc.*, 99 F. Supp. 2d at 1201-02; *FTC v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451, 462 (D. Md. 2004); *Sunshine Art Studios, Inc. v. FTC*, 481 F.2d 1171, 1175 (1st Cir. 1973).
[14] *See* Gordon SGI at pp. 12-27 (responding to UF nos. 34-106).
[15] *AmeriDebt, Inc.*, 343 F. Supp. 2d at 463.
[16] *See* SJ Reply Ex. 1 (excerpts from Gordon's third deposition); Gordon SGI at pp. 18-19, 39, 41-44 (responding to UF nos. 58-59, 157-159, 165-168, 173-176, 180-182, 187-189).
[17] *See* Defs.' Opp. at 14-15.
[18] *See* Gordon SGI at pp. 62-64, 73-75 (responding to UF nos. 285-291, 321-326).

provided pro bono.[19] Rather, the Gordon Defendants argue that they complied with Regulation O because contracts later provided to consumers "clarified any potential misconception" and stated what was provided for a fee.[20]

However, the undisputed facts demonstrate that typically consumers did not receive these contracts until after agreeing to purchase the loan modification services and only received the "pro bono" contract that described the modification services after making their first payment.[21] As discussed in prior briefs, and demonstrated by the undisputed facts, consumers were purchasing loan modification services, not "custom legal products."[22] The Gordon Defendants respond that the parol evidence rule and estoppel by contract bar this conclusion.[23] However, as discussed in the Bureau's Opposition, these doctrines are inapplicable to a government enforcement action.[24]

Finally, the Gordon Defendants argue that they are exempt from Regulation O because the FTC declined to include "products" within the definition of "Mortgage Assistance Relief Service."[25] But, as discussed in prior briefs, the FTC's MARS Rule Statement states that providers "should be aware that merely including a product, such as

---

[19] *See* Gordon SGI at p. 77 (responding to UF nos. 333-334).
[20] *See* Gordon SGI at 62-64, 73-75, 77 (responding to UF nos. 285-291, 321-326, 333-334). The Gordon Defendants also state that Defendant Pessar was responsible for the representations made by sales representatives, but as discussed in Section III, *supra*, the Gordon Defendants were engaged in a common enterprise with Defendant Pessar and are also responsible.
[21] *See* Gordon SGI at pp. 76-77 (responding to UF nos. 328-331).
[22] *See* Bureau's Mem. at Section III.D.1; Bureau's Opp. at Section III; *see also* Gordon SGI at pp. 27-29, 34-35, 51-52, 62-64, 73-77 (responding to UF nos. 107-115, 128-134, 233-237, 285-291, 321-326, 328-331).
[23] *See* Defs.' Opp. at 15-17.
[24] *See* Bureau's Opp. at Section IV. *See, e.g., FTC v. Minuteman Press*, 53 F. Supp. 2d 248, 262-63 (E.D.N.Y. 1998) (parol evidence rule not a bar to extrinsic evidence in government enforcement action); *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 870, 118 Cal. Rptr. 2d 770 (2002); Cal. Evid. Code § 622 (West) ("[F]acts recited in a written instrument are conclusively presumed to be true *as between the parties thereto*…") (emphasis added).
[25] *See* Defs.' Opp. at 17-18.

a book, in conjunction with the sale of services will not remove the transaction from coverage by the Rule."[26] The Gordon Defandants began offering "custom legal products" in conjunction with loan modification services in order to circumvent Regulation O, which is precisely what the FTC said would not be permitted.[27]

## V. Undisputed Facts Show That The Gordon Defendants Violated The CFPA.

The Gordon Defendants' also argue that the Bureau cannot prove their actions were "unfair" or "abusive" under the CFPA, concluding that "therefore, Plaintiff cannot obtain summary judgment."[28] However, the Bureau has never alleged or attempted to prove that the Defendants' conduct was unfair or abusive under the CFPA.

Rather, the Bureau alleges – and has proven – that Defendants' false and misleading representations constitute deceptive acts that violate the CFPA. The Gordon Defendants argue that consumers could not have been deceived because they signed written agreements and that "[i]t is well settled that the consumers signing the agreements are deemed to have read and understood them."[29] This is not a correct statement of the law. In fact, it is well-established that an act or practice is deceptive if there is a representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances, and that is material to consumers.[30] Even if defendants provided

---

[26] Mortgage Assistance Relief Services Rule, Final Rule and Statement of Basis and Purpose, 75 Fed. Reg. 75092-01 at 75102 n. 137 (2010) ("MARS Rule Statement"). The FTC's interpretation of the MARS Rule, which has been adopted by the Bureau, *see* 76 Fed. Reg. 43659, 43570 (July 21, 2011), is controlling. *See Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 911, 137 L. Ed. 2d 79 (1997).

[27] *See* Gordon SGI at pp. 28-29, 33 (responding to UF nos. 111-112, 125).

[28] Defs.' Opp. at 10.

[29] Defs.' Opp. at 11.

[30] *See* Bureau's Mem. at Section III.C. The Gordon Defendants also argue that there is no legal authority for the Bureau's allegation that their use of a District of Columbia return address on mailers was deceptive. However, the Bureau's Memorandum cited *Floersheim v. FTC*, 411 F.2d 874, 877 (9th Cir. 1969), in which the Ninth Circuit found that the appearance and prominent use of the words "Washington D.C." on forms from a private company, similar to the postcard

appropriate disclaimers to consumers, which they did not, it is the common-sense net impression that controls.[31] Here, the facts and law are clear that the written contracts Defendants presented to consumers did not cure or alter the misleading net impression created by Defendants.[32]

## VI. **The Bureau's Requested Remedies Are Appropriate.**

Courts apply a burden-shifting framework to determine the specific amount of equitable monetary relief to award.[33] First, the plaintiff bears the initial burden of providing the district court with a reasonable approximation.[34] Once this burden is satisfied, the defendant must "demonstrate that the figures are inaccurate."[35] "Any fuzzy

---

mailers here, created the deceptive impression that the forms were from the government even though they contained a small print disclaimer stating otherwise. *See* Bureau's Mem. at 14 n.12.

[31] *See, e.g., Resort Car Rental System, Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975) ("The Federal Trade Act is violated if [advertising] induces the first contact through deception, even if the buyer later becomes fully informed before entering the contract."); *FTC v. Gill*, 71 F. Supp. 2d 1030, 1044 (C.D. Cal. 1999), *aff'd*, 265 F.3d 944 (9th Cir. 2001); *see also FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006); *Minuteman Press*, 53 F. Supp. 2d at 262-63.

[32] *See* Bureau's Mem. at II.B, III.C. *See also* Gordon SGI at pp. 35, 57, 62, 66-68 (responding to UF nos. 133-134, 266, 285, 301, 302, 305) (failing to dispute that consumers thought they purchased loan modification services or forensic audits, or that Defendants were affiliated with the government).

[33] *See FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1088-89 (C.D. Cal. 2012); *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 15 (1st Cir. 2010).

[34] *See Commerce Planet, Inc.*, 878 F. Supp. 2d at 1089 ("A reasonable estimate… is proper because that may be the only information available, as when defendants do not maintain data necessary to calculate the precise amount."); *Direct Mktg. Concepts, Inc.*, 624 F.3d at 15. *See also FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997); *FTC v. QT, Inc.*, 512 F.3d 858, 864 (7th Cir. 2008) ("A court is entitled to proceed with the best available information....").

[35] *Commerce Planet, Inc.*, 878 F. Supp. 2d at 1089, citing *Direct Mktg. Concepts*, 624 F.3d at 15.

figures due to a defendant's uncertain bookkeeping cannot carry a defendant's burden to show inaccuracy."[36]

Here, the Bureau's request for disgorgement and restitution is entirely appropriate. Restitution may be measured by the "the full amount lost by consumers rather than limiting damages to a defendant's profits."[37] Consumer loss is calculated by "the amount of money paid by the consumers, less any refunds made."[38] Moreover, the CFPA authorizes the court to order a defendant to disgorge illegally obtained funds.[39] The full amount of consumer loss is an appropriate measure of disgorgement.[40] The purpose of disgorgement is not to redress consumer injuries but to deprive wrongdoers of ill-gotten gains.[41]

As set forth in the Bureau's Memorandum at Section III.E, the Bureau seeks a judgment against the Gordon Defendants, jointly and severally, in the amount of $11,403,338.63 as disgorgement of their ill-gotten gains and restitution to consumers. An examination of bank records demonstrates that Defendants' gross revenue was $11,403,338.63.[42] This is the appropriate amount of disgorgement and restitution, as it represents the full amount taken in by Defendants' unlawful scheme. Although the

---

[36] *Id.*, citing *Direct Mktg. Concepts*, 624 F.3d at 15; *see also Febre*, 128 F.3d at 535 ("[T]he risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty.") (citation and quotation marks omitted).

[37] *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009) (affirming restitution of over $17 million for the full amount of consumer loss); *see also Febre*, 128 F.3d at 536 (affirming restitution for more than $16 million against company and officer as consumer loss).

[38]*FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp.2d 202, 213-214 (D.Mass. 2009); *see also Stefanchik*, 559 F.3d at 931; *FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993); *Gill*, 71 F. Supp. 2d at 1048 n. 20.

[39] 12 U.S.C. §§ 5565(a)(1) and (2).

[40] *Stefanchik*, 559 F.3d at 931-932; *FTC v. Medicor LLC*, 217 F. Supp. 2d 1048, 1057-1058 (C.D. Cal. 2002).

[41] *Febre*, 128 F.3d at 537; *Commerce Planet, Inc.*, 878 F. Supp. 2d at 1088.

[42] *See* Gordon SGI at pp. 26-27 (responding to UF nos. 105-106).

Gordon Defendants state that refunds should be subtracted, they fail to provide any statistics or empirical data to show an amount of refunds actually issued to consumers.

In addition, the Gordon Defendants argue that the Bureau has failed to account for "satisfied customers."[43] However, the Bureau is not required to prove that all consumers were deceived or suffered injury, nor does the Bureau need to prove individual reliance on the misrepresentation by each purchasing consumer.[44] Indeed, having shown that Defendants made material misrepresentations, that they were widely disseminated, and that consumers purchased Defendants' products or services, a presumption of actual reliance arises.[45]

Futhermore, the existence of some satisfied customers is irrelevant.[46] As the Gordon Defendants correctly state, disgorgement should include "funds illegally taken from the victims."[47] What the Gordon Defendants fail to grasp is that Defendants' actions in collecting the fees in advance of performing mortgage assistance relief services, *regardless of the outcome of those services*, violates Regulation O.

The Gordon Defendants also argue that because Plaintiff has a judgment entered against Pessar, a judgment against Gordon is not necessary.[48] On the contrary, as discussed above in Section III, and in the Bureau's Memorandum at Section III.B, Gordon is jointly and severally liable for the entire judgment amount.

Finally, the Gordon Defendants argue that an injunction is not justified here based solely on Gordon's self-serving statement that he no longer has a desire to help distressed

---

[43] Defs.' Opp. at 19.
[44] *See Figgie Int'l, Inc.*, 994 F.2d at 605-606; *Stefanchik*, 559 F.3d at 929; *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 572 (7th Cir. 1989) (explaining that government "need not prove that every consumer was injured"), *cert. denied*, 493 U.S. 954, 110 S. Ct. 366, 107 L. Ed. 2d 352 (1989).
[45] *Figgie Int'l, Inc.*, 994 F.2d at 605-606.
[46] *See Gill*, 71 F. Supp. 2d at 1049 n. 21; *Stefanchik*, 559 F.3d at 929 n. 21.
[47] Defs.' Opp. at 19.
[48] *See* Defs.' Opp. at 20-21.

homeowners.[49] In determining the need for permanent injunctive relief, courts consider the totality of the circumstances surrounding the Defendants and their violations of law.[50] Here, a permanent injunction is appropriate based on Defendant Gordon's history and the circumstances in this case.[51]

## VII. The Gordon Defendants' Appointment-Related Challenges Lack Merit.

In their Opposition, the Gordon Defendants argue that the Bureau's authority to bring this case is somehow circumscribed because Director Cordray currently serves pursuant to a recess appointment.[52] As explained briefly in the Bureau's Opposition, this argument is meritless.[53] As an initial matter, to support this specious argument, the Gordon Defendants do not cite any law, but rely exclusively on a report issued jointly by the Offices of the Inspector General of the Board of Governors of the Federal Reserve System and the Department of the Treasury (the "OIG Report").[54] Contrary to the Gordon Defendants' suggestion,[55] the OIG report does not purport to limit the Bureau's authority under Director Cordray; it was issued in July 2011, months before the President's recess appointment, and therefore does not support (or even address) the Gordon Defendants' argument. Nor could the OIG Report limit the Director's authority, as OIG Reports do not carry the force of law.[56]

---

[49] *See* Defs.' Opp. at 21.
[50] *FTC v. Magui Publishers, Inc.*, No. 89–3818RSWL(GX), 1991 WL 90895, at *15 (C.D. Cal. Mar. 28, 1991).
[51] *See* Bureau's Mem. at Section III.E.
[52] Defs.' Opp. at 4.
[53] *See* Bureau's Opp. at 20 n.14.
[54] *See* Defs.' Opp. at 4.
[55] *See, e.g.*, *id.* at 4 ("the OIG Report . . . strips Plaintiff of the authority to file and advance the instant action"), *id.* at 5 ("Cordray's appointment was in direct violation of the OIG directive"),
[56] Inspectors General conduct investigations, audits, and evaluations and make appropriate recommendations to the head of the agency and Congress, *see* 5 U.S.C. App. § 4, but their views do not bind the agency or the courts. *See, e.g.*, *Alexander v. United States*, 52 Fed. Cl. 710, 715 (Fed. Cl. 2002) (noting that the Department of Defense "Inspector General's conclusion binds neither the adjutant general nor the court").

Indeed, the Gordon Defendants fail to cite any legal support for their argument, and the law that does exist is clearly to the contrary. As Plaintiff explained in its Opposition, the CFPA provides that "the Director of the Bureau shall be appointed by the President, by and with the advice and consent of the Senate."[57] This is standard statutory language with respect to the appointment of judges or principal officers of the Executive branch, and courts have not construed such language as evincing a congressional intent to limit the President's authority under the Recess Appointment Clause. [58] Indeed, given the significant separation of powers concerns that would arise, courts are "unwilling to infer that [a statute] precludes the President from exercising a constitutionally granted power absent clear evidence that this was Congress' intent."[59] The Gordon Defendants have cited no evidence that, in enacting the CFPA, Congress intended to limit the authority of the Bureau under a recess appointee, and the government is not aware of any. Accordingly, the Court should decline the Gordon Defendants' invitation to resolve a theoretically significant but actually nonexistent constitutional dispute involving the authority of two coordinate branches of government.

As Plaintiff explained at length in its Opposition, the President's recess appointment of Director Cordray was constitutional.[60] Gordon's citations to the OIG Report and out-of-circuit precedent should be rejected.

---

[57] 12 U.S.C. § 5492(b)(2).

[58] *Compare* 28 U.S.C. § 133(a) ("The President shall appoint, by and with the advice and consent of the Senate, district judges for the several judicial districts as follows"), *with United States v. Woodley*, 751 F.2d 1008 (9th Cir. 1985) (upholding the constitutionality of a recess appointment of a federal district judge). *See also* Congressional Research Service, President Obama's January 4, 2012, Recess Appointments: Legal Issues, CRS Report R42323, at 28 n.160 (Jan. 23, 2012) (citing statutes).

[59] *Swan v. Clinton*, 100 F.3d 973, 986 (D.C. Cir. 1996); *see also Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 239 F. Supp. 2d 1367, 1379-80 (C.I.T. 2002); *Staebler v. Carter*, 464 F. Supp. 585, 591 (D.D.C. 1979).

[60] The Gordon Defendants briefly refer the Court to their motion for summary judgment and to *Noel Canning v. NLRB*, 705 F.3d 490 (D.C. Cir. 2013), *petition for cert. filed*, 81 U.S.L.W. 3629

Respectfully Submitted,

Dated: June 10, 2013

KENT MARKUS
Enforcement Director

s/ *Laura Schneider*
LAURA SCHNEIDER
CRYSTAL R. SUMNER
JAMES MEADE
Attorneys for Plaintiff
Consumer Financial Protection Bureau

STUART M. DELERY
Acting Assistant Attorney General

IAN HEATH GERSHENGORN
Deputy Assistant Attorney General

ANDRÉ BIROTTE
United States Attorney

SUSAN K. RUDY
Assistant Director, Federal Programs Branch

s/ *Ethan P. Davis*
ETHAN P. DAVIS
BRADLEY H. COHEN
BENJAMIN L. BERWICK
TAMRA T. MOORE
BRIGHAM J. BOWEN
STEPHEN J. BUCKINGHAM
JONATHAN G. COOPER
Counsel for Plaintiff[61]
Trial Attorneys, Federal Programs Branch
U.S. Department of Justice, Civil Division

---

(U.S. April 25, 2013) (No. 12-1281) and *NLRB. v. New Vista Nursing and Rehabilitation*, --- F.3d ---, 2013 WL 2099742 (3d Cir. May 16, 2013), for the proposition that Director Cordray's recess appointment was unconstitutional. *See* Defs.' Opp. at 4 n. 2. Their continued failure to present a developed argument on these two cases renders this constitutional claim waived. But, even if the Court were to consider this argument, the Gordon Defendants' argument runs counter to the long-settled understanding of the Recess Appointments Clause that countenances both intra- and inter-session recess appointments—an interpretation that is consistent with the text, original understanding, and purpose of the clause. *See* Bureau's Opp. at Section V.

[61] The Department of Justice appears solely for the purpose of defending the constitutionality of the President's appointment of Director Cordray.

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2013, the **Plaintiff's Reply to the Gordon Defendants' Opposition to Plaintiff's Motion for Summary Judgment or in the Alternative Summary Adjudication of the Issues** and the **Third Declaration of Laura in Support of Plaintiff's Reply to the Gordon Defendants' Opposition to Plaintiff's Motion for Summary Judgment or in the Alternative for Summary Adjudication of the Issues** were filed electronically and served upon the parties and/or counsel via e-mail to all parties by operation of the court's electronic filing system, including:

| | |
|---|---|
| Gary Kurtz, Esq. | gary@garykurtzlaw.com |
| Kent A. Kawakami | kent.kawakami@usdoj.gov |
| Gary O. Caris | gcaris@mckennalong.com |
| Crystal Renee Sumner | crystal.sumner@cfpb.gov |
| James Meade | james.meade@cfpb.gov |

I declare upon the penalty that the foregoing is true and correct.

Executed on June 10, 2013, at Washington, D.C.

s/ *Laura Schneider*

Laura Schneider