Gary Kurtz, Esq. SBN 128295
**Law Office of Gary Kurtz,** A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364
Telephone: 818-884-8400
Telefax: 818-884-8404
E-Mail: gary@garykurtzlaw.com

Attorneys for Chance E. Gordon
and The Gordon Law Firm, P.C.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>CHANCE E. GORDON, et. al.,<br><br>Defendants. | Case No.: CV12-6147 RSWL(MRWx)<br><br>GORDON DEFENDANTS' **REPLY** IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES OR CLAIMS<br><br>Date: June 17, 2013<br>Time: 1:30 p.m.<br>Place: Courtroom 15<br>Hon. Percy Anderson |

///

///



Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

# TABLES

## Table of Contents


| Section | Page |
|---|---|
| I. Introduction | 1 |
| II. The Undisputed Facts And Governing Legal Authority Compel The Conclusion That Plaintiff Lacks Standing Because Its Director Was Not Lawfully Appointed And Does Not Validly Hold His Position | 2 |
| A. Plaintiff Lacks Jurisdiction Over Non-Banking Persons Without A Validly Appointed And Confirmed Director | 2 |
| 1. Canning Supports Summary Judgment | 4 |
| 2. *New Vista* Supports Summary Judgment | 6 |
| B. Plaintiff's Responsive Arguments All Lack Merit | 6 |
| 1. The Waiver Argument Fails | 6 |
| 2. Woodley Is Inapposite | 7 |
| 3. The Presented Issue Is Authority And Agency Jurisdiction, Not Jurisdiction Of This Court | 8 |
| 4. Plaintiff's History Lesson Does Not Validate Its Lack Of Authority To Prosecute The Instant Action | 9 |
| III. The Final Counts Fail Because Defendants Did Not Provide Not Provide Mortgage Assistance Relief Services As Defined By Regulation O | 11 |
| A. Contracts Define The Financial Arrangements | 11 |
| B. The Written Contracts Must Be Deemed To Supersede Contrary Representations Or Understandings | 13 |
| C. The Written Contracts Define The Deals | 16 |
| D. Partial Summary Judgment Is Proper On The Regulation O Counts | 19 |
| IV. Conclusion | 20 |

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

**Table of Authorities**


| Case | Page |
|---|---|
| *American Forest and Paper Assoc. V. U.S. E.P.A.*, 137 F.3d 291 (5th Cir. 1998)) | 8 |
| *American Home Assurance Co. v. Phineas Corp.*, 347 F. Supp.2d 1231 (M.D. Fla 2004) | 13 |
| *Burden v. Check Into Cash of Kentucky*, LLC, 267 F.3d 483 (6th Cir. 2001) | 13 |
| *Canning v. N.L.R.B.*, 705 F.3d 490 (D.C. Cir. 2013) | 3,4,8,9,10 |
| *Carlock v. Pillsbury Co.*, 719 F.Supp. 791 (D. Minn. 1989) | 18 |
| *Employee Painters Trust v. J & B Finishes*, 77 F.3d 1188 (1996) | 13 |
| *Evans v. Stephens*, 387 F.3d 1220 (11th Cir, 2004) | 4,10 |
| *FTC v. Bunte Bros., Inc.* 61 S.Ct. 580, 85 L.Ed. 881 (1941) | 8 |
| *FTC v. Cyberspace.com LLC*, 2002 WL 32060289 (W.D. Wash. 2002), *aff'd*, 453 F.3d 1196 (9th Cir. 2006) | 18 |
| *FTC v. Minuteman Press*, 53 F.Supp.2d 248 (E.D. N.Y. 1998) | 18 |
| *Hall v. Burger King Corp.*, 912 F.Supp. 150 (S.D. Fla. 1995) | 13 |
| *In re Estate of Wilson*, 64 Cal.App.3d 786, 801 (1977) | 16 |
| *In re Hyun-Bok Chung*, 43 B.R. 368 (USBC Hawaii 1984) | 13 |
| *In re Marriage of Brooks*, 169 Cal.App.4th 176, 184 (2009) | 16 |
| *N.L.R.B. v. New Vista Nursing and Rehabilitation*, 2013 WL 2099742 (3d Cir. 2013) | 3,6,8,9 |
| *National Assoc. Of State Utility Consumer Advocates v. F.T.C.*, 457 F.3d 1238 (11th Cir. 2006) | 8 |
| *National Mining Assoc. v. Fowler*, 324 F.3d 752 (D.C. Cir. 2003) | 8 |
| *O'Neill v. N.A.S.D, Inc.*, 667 F.2d 804 (9th Cir 1982) | 13 |
| *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1001 (9th Cir. 1984) | 13 |
| *Plaza Freeway Ltd. Partnership v. First Mountain Bank*, 81 Cal.App.4th 616 (2000 | 16 |
| *Rimes v. Noteware Dev. LLC*, 2010 WL 1644693 (N.D. Cal. 2010) | 7 |

| Case | Page |
|---|---|
| *Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732 F.Supp.2d 952 (N.D. Cal. 2010) | 13 |
| *United States v. $22,474.00 in Currency*, 246 F.3d 1212, 1218 (9th Cir. 2001) | 7 |
| *United States v. Woodley*, 751 F.2d 1008 (9th Cir. 1985) | 7,9 |
| *Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L.Ed. 203 (1875) | 13 |
| *Wang v. Massey Chevrolet*, 97 Cal.App.4th 856 (2002) | 17 |

| Other | Page |
|---|---|
| 2 CFR § 1015 | 11 |
| 12 USC 5491(b)(2) | 3 |
| California Evidence Code § 622 | 16 |
| 75 Fed.Reg 75092-01 at 75102 (December 2010) | 15 |



Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

## I. Introduction

The Gordon Defendants' summary judgment motion asserts three essential positions. First, Plaintiff lacks authority to prosecute the instant action because of Constitutional, statutory and regulatory irregularities. Second, the Gordon Defendants' former business model was designed so no aspect was regulated by Regulation O. Third, the Gordon Defendants are not covered persons under the CFPA. Upon consideration of Plaintiffs' opposition, the Gordon Defendants suggest that the entire action should be dismissed because it exceeds the CFPB's authority. Alternatively, Counts IV to VIII should be dismissed because Regulation O does not apply to the pay program for products or the free program for modification services. The Gordon Defendants will concede that summary judgment is not justified on the first three counts based on the argument advanced in the initial moving papers.

The Gordon Defendants are entitled to Summary Judgment in this matter because Plaintiff's prosecution represents an unlawful and unconstitutional power grab. The current executive administration has violated Constitutional, statutory, and regulatory mandates in the appointment of the CFPB's purported Director, Richard Cordray. Mr. Cordray's appointment was made in flagrant disregard for one of the checks and balances written into to United States Constitution, namely Senate confirmation of Presidential appointments. Accordingly, it is up to the Judicial branch of government, **namely this Court,** to exercise its check and balance power and limit an out of control agency to the authority it should have without a validly appointed director. That authority **does not** extend to filing and prosecuting the instant lawsuit.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Plaintiff tacitly admits the significance of the issues put in play by the instant motion. The normal power imbalance (e.g., 4 government paid lawyers versus a sole practitioner with an indigent client) has swelled to 9 government paid lawyers seeking a result that is contrary to the current trend of well reasoned appellate opinions that disavows an obvious Presidential political ploy to circumvent the Senate's confirmation duty. It is this Court's duty to send the message that Constitutional safeguards must not bow to political expediency. Shockingly, the tables seem to have turned, from the CFPB aggressively depriving Mr. Gordon of his money, his assets, his livelihood, his home, his automobile, and the ability to live his life above the poverty level, to the Bureau fiercely attempting to justify its ability to exceed its lawful authority to persecute Mr. Gordon and deprive him of is civil rights. It is time to end this charade, limit Plaintiff to its proper scope of power, and grant Summary Judgment to an oppressed, homeless, former lawyer who should be able to build his life back sooner rather than later.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

## II. The Undisputed Facts And Governing Legal Authority Compel The Conclusion That Plaintiff Lacks Standing Because Its Director Was Not Lawfully Appointed And Does Not Validly Hold His Position.

### A. Plaintiff Lacks Jurisdiction Over Non-Banking Persons Without A Validly Appointed And Confirmed Director

The argument against the bureau is quite simple and is based on the application of undisputed facts to the governing law. Arriving at the correct result does not require a stroll down antiquity or a canvas of 200 years of constitutional analysis. That was recently done both by the D.C. Circuit and the Third Circuit

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Courts of Appeals, which both came to the same conclusion (for different reasons) that "intrasession recess" appointments, particularly three appointments **on the very same day Mr. Cordray was appointed**, are Constitutionally invalid. *Canning v. N.L.R.B.*, 705 F.3d 490 (D.C. Cir. 2013); *N.L.R.B. v. New Vista Nursing and Rehabilitation*, 2013 WL 2099742 (3d Cir. 2013).

The essential facts necessary to grant summary judgment are not disputed and are as follows:

- Plaintiff was established as the result of the Dodd-Frank Act, which specifically requires "the Director shall be appointed by the President, by and with the advice and consent of the Senate." 12 USC 5491(b)(2).[1]

- The powers (and limits thereon) and direction for the CFPB were outlined in a July 15, 2011 report of the Office of Inspector General, which was entitled "Review of CFPB Implementation Planning Activities" (hereinafter "OIG Report"). The OIG report limits the CFPB's powers before there is "a presidentially appointed, Senate-confirmed director" and does not permit the Bureau to "prohibit unfair, deceptive, or abusive acts or practices under subtitle C

---

[1] Plaintiff attempts to address this issue in their opposition, page 9, fn. 14. Plaintiff's point is inapposite. Defendants are not using the statutory limits to challenge Mr. Cordray's ability to sit in the Director's seat but, rather, the scope of the Bureau's authority. That authority expands to cover non-banking persons upon the Presidential appointment and Senate Confirmation of a Director. The Presidential appointment is subject to separate Constitutional challenge, but the statutory and regulatory limitation on the agency's power **is independent** of the Constitutional issue.

in connection with consumer financial products and services"[2] or "supervise nondepository institutions . . . ."[3] Thus, the instant enforcement action is prohibited by statute and regulation.

### 1. Canning Supports Summary Judgment

The *Canning* decision is most persuasive because it dealt with and invalidated recess clause appointments made on the very same day as Mr. Cordray. In a well reasoned opinion that need not be repeated here, the court justified its holding based on the following key points that apply to the case at bar:

- A "recess" for recess appointment analysis occurs in the time between sessions ("intersession"), not during breaks in sessions ("intrasession"). *Canning*, *supra*., 705 F.3d at 504-10. In reaching this conclusion, the *Canning* court, dismissed the contrary, erroneous, analysis of the 11th Circuit in *Evans v. Stephens*, 387 F.3d 1220 (11th Cir. 2004)[4] as follows:

> While we respect our sister circuit, we find the *Evans* opinion unconvincing. Initially, we note that the Eleventh Circuit's analysis was premised on an incomplete statement of the Recess Appointments Clause's purpose: "to enable the President to fill vacancies to assure the proper functioning of our government." *Id*. at 1226. This

---

[2] Which provides grounds to grant summary adjudication of the first three counts.

[3] Which provides grounds to grant summary judgment regarding the entirety of the pending action.

[4] Plaintiff's position in the instant case is based, in large part on the the contrary, erroneous, analysis stated in the older *Evans* case, which was addressed and corrected in *Canning*.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

> statement omits a crucial element of the Clause, which enables the President to fill vacancies *only when the Senate is unable to provide advice and consent*. *See, e.g.*, 2012 OLC Memo, *supra*, at 10 ("[T]he recess appointment power is required to address situations in which the Senate is unable to provide advice and consent on appointments."). As we have explained, the Clause deals with the Senate's being unable to provide advice and consent only during "the Recess," *viz*., an intersession recess. As written, the Eleventh Circuit's statement disregards the full structure of the Constitution's appointments provision, which makes clear that the recess appointments method is secondary to the primary method of advice and consent. The very existence of the advice and consent requirement highlights the incompleteness of the Eleventh Circuit's broad statement of constitutional purpose.

*Canning, supra*., 705 F.3d at 505

- When Mr. Cordray. was appointed on January 4, 2012, the Senate was in session, with the session starting January 3, 2012 as required by the Constitution. "[T]he Senate was operating pursuant to a unanimous consent agreement, which provided that the Senate would meet in *pro forma* sessions every three business days." *Canning, supra*., 705 F.3d at 498-99.

- Alternatively, because the vacancy for the position of CFPB Director existed **before** the recess, that position could not be filled by an exercise of the President's recess appointment power. Disapproving older authorities reaching a different conclusion, the *Canning* court held:

> The power of a written constitution lies in its words. It is those words that were adopted by the people. When those words speak clearly, it is not up to us to depart from their meaning in favor of our own concept of efficiency, convenience, or facilitation of the functions of government. <u>In light of the extensive evidence that the original public</u>



Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

> meaning of "happen" was "arise," we hold that the President may only make recess appointments to fill vacancies that arise during the recess.

*Canning, supra.*, 705 F.3d at 511-12 (emphasis supplied). This Court need not reach the alliterative argument, which is contrary to older 9th Circuit authority, because the current governing authority and better reasoned appellate argument is that appointments made during intrasession recesses are unconstitutional.

### 2. *New Vista* Supports Summary Judgment

The Third Circuit took a slightly different path to reach the same conclusion in *N.L.R.B. v. New Vista Nursing and Rehabilitation*, 2013 WL 2099742 (3d Cir. 2013). In reviewing the different definitions of recess, the *New Vista* court dismissed intrasession breaks and periods where the Senate was holding *pro forma* sessions and succinctly stated: "We hold that 'the Recess of the Senate' means only intersession breaks." *New Vista, supra.*, at *13. The court provided a detailed historical analysis as well as a contextual analysis supporting that holding. It would serve no purpose to paraphrase the court's reasoning, however, the text of the appellate opinion addresses and refutes Plaintiff's erroneous historical analysis in its opposition brief.

## B. Plaintiff's Responsive Arguments All Lack Merit.

### 1. The Waiver Argument Fails

Plaintiff's waiver argument is disingenuous as it **grossly overstates** the meaning and holdings of the cited cases. For example, the offending argument in

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

*United States v. $22,474.00 in Currency*, 246 F.3d 1212, 1218 (9th Cir. 2001), was "a cursory reference to the Eighth Amendment." In *Rimes v. Noteware Dev. LLC*, 2010 WL 1644693 (N.D. Cal. 2010), a conclusory argument was rejected because the defendant "provides no explanation at all as to why venue is improper." These holdings have no relationship to the argument the Gordon Defendants presented in their opening brief.

Defendants' moving papers present the essential arguments necessary to conclude Plaintiff lacks standing. The relevant facts were stated and proven without dispute. The recent, governing authorities were cited with important passages, containing the holdings relevant to the instant motion, quoted for the Court's convenience. While Gordon presumed that it was unnecessary to paraphrase the governing authorities that this Court and its clerks would certainly read, that does not render the argument "perfunctory" in manner.

**2. <u>Woodley Is Inapposite</u>**

Plaintiff's reliance on *United States v. Woodley*, 751 F.2d 1008 (9th Cir. 1985) is misplaced. The *Woodley* Court dealt with a recess appointment that took place on December 31, 1980, after the Senate recessed on December 16, 1980 and before the new Senate convened on January 3, 1981. Accordingly, the appointment was made on an **intersession** recess, which both *Caning* and *New Vista* say is proper. The holding of *Woodley* ***does not*** purport to validate intrasession appointments and does not even expressly recognize the distinction.

*Woodley* does differ from *Caning* because it holds that the vacancy does not have to occur during a recess. This Court need not address that issue because

Plaintiff's purported Director was appointed intrasession, which is sufficient alone to invalidate the appointment and hold Plaintiff does not have the authority to prosecute the instant action.

### 3. **<u>The Presented Issue Is Authority And Agency Jurisdiction, Not Jurisdiction Of This Court</u>**

Defendants' summary judgment motion is based on the second, sixth and seventh affirmative defenses in their answer, which each challenge Plaintiff's authority (e.g., jurisdiction) to prosecute the instant action. It is settled that the scope of agency authority may be challenged in and limited by an action in court. *See FTC v. Bunte Bros., Inc.* 61 S.Ct. 580, 85 L.Ed. 881 (1941); *American Forest and Paper Assoc. V. U.S. E.P.A.*, 137 F.3d 291 (5th Cir. 1998)); *National Mining Assoc. v. Fowler,* 324 F.3d 752 (D.C. Cir. 2003). In *National Assoc. Of State Utility Consumer Advocates v. F.T.C.*, 457 F.3d 1238, 1251 (11th Cir. 2006), the court explained: "'Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily.' [citations omitted.]"

The issue **is not** whether this Court has jurisdiction, as suggested in Plaintiff's "straw-man" argument (footnote 6). The issue is whether victims prosecuted by a federal law enforcement agency running amuck can defend themselves by demonstrating the agency is exceeding its authority and cannot lawfully continue its prosecution. The *Canning* and *New Vista* decisions support the legitimacy of Defendants' challenge in this action. Those cases both invalidated NLRB action based on the lack of statutory authority to initiate the

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

challenged actions. In both *Canning* and *New Vista*, the invalidity of appointments of NLRB members provided a full defense to the Bureau's *ultra vires* rule-making of enforcement actions. Defendants here present the same type of defense and seek a result consistent with the *Canning* and *New Vista* decisions.

### 4. Plaintiff's History Lesson Does Not Validate Its Lack Of Authority To Prosecute The Instant Action

Plaintiff spends an inordinate amount of time presenting what could be either (a) a law review article describing what the law **used** to be; or (b) the losing positions advanced by the NLRB and or Department of Justice in the *Canning* and/ or *New Vista* matters; or (c) dissenting opinions in the *Canning* and/or *New Vista* cases. Despite the admirable writing skills demonstrated by Plaintiffs' team of government lawyers, their positions lack merit, are contrary to recent decisional authority on the very same subjects, and are effectively refuted on opinions published by two Circuit Appellant Courts.

The poor and/or biased quality of Plaintiff's cited authority is noteworthy. Plaintiff relies heavily on the opinions of a Congressional analyst and its own pronouncements stated through the Dept. of Justice, Office of Legal Counsel. It is neither surprising not persuasive that position papers published by the Department of Justice, which has joined to attempt to defend the CFPB's authority, support its position in this case. Each of those positions was explained away or corrected by the appellate justices in the *Canning* and *New Vista* published opinions. As the interpretation of the Constitution and the law is a judicial function, the reasoning

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

and conclusion of the D.C. Circuit and the Third Circuit should carry more weight than a Congressional analyst and Plaintiffs' own position papers.

This historical argument is easily rebutted. The Ninth Circuit explained in *Woodley, supra.*, 751 F.2d at 1011 "historical acceptance alone cannot conclusively establish a practice's constitutionality." In *Canning, supra.*, 705 F.3d at 501, the court stated: "the historical role of the Recess Appointments Clause is neither clear nor consistent." That court continued to explain: "Presidents made only three documented intrasession recess appointments prior to 1947, with the other two coming during the presidencies of Calvin Coolidge and Warren Harding." *Canning, supra.*, 705 F.3d at 502. That court continued, "we conclude that practice of a more recent vintage is less compelling than historical practice dating back to the era of the Framers." *Id.*

Similarly, Plaintiff's arguments about the text and original understanding of the recess appointments clause and the purpose of the recess appointments clause are effectively refuted in *Canning* and *New Vista*. These primary arguments set forth in Plaintiff's opposition are stated and refuted in *Canning* and *New Vista*.

Finally, Plaintiff wastes three pages of argument challenging the reasoning set forth in *Canning* and *New Vista*. Each of the arguments presented are addressed and refuted in those decisions, which should carry significantly more weight than the biased analysis of either party to this case. As explained above, the defect in intrasession appointments is not inconsistent with the *Woodley* case's ratification of intersession judicial appointments. While *Canning* (D..C. Circuit 2013) is inconsistent with *Evans* (11th Circuit 2004), the recent authority addresss the flaw in the 11th Circuit's reasoning.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

## III. The Final Counts Fail Because Defendants Did Not Provide Mortgage Assistance Relief Services As Defined By Regulation O

Plaintiff expressly admits that Regulation O, which is codified 12 CFR § 1015, et seq. and is the basis for Counts IV through VII, inclusive, of the complaint, only applies to persons who offer loan modification services for consideration. These challenged counts should be dismissed upon a finding that fees were charged for products that intentionally are not covered by Regulation O and no consideration was changed for loan modification services.

### A. Contracts Define The Financial Arrangements

There is no dispute that Regulation O defined and changed the legal requirements for persons providing mortgage relief services as that term is defined. There is no question that persons providing mortgage relief services had significant obligations and limitations foisted upon them by the Regulation. There is also no question that the Gordon Defendants restructured their business procedures to comply with Regulation O. Compliance took the form of creating programs that did not fit within the foundational requirements for Regulation O coverage.

While Plaintiff describes Gordon's compliance efforts with words like "circumvent" and "sham," those pejorative terms are entirely inappropriate. Rather, Mr. Gordon, acting as a law abiding citizen who had the knowledge and interest necessary to help distressed homeowners, crafted a means to continue to assist distressed homeowners. At the analytical extreme, every behavioral change to comply with new legislation may be mischaracterized as Plaintiff does here, but we do not criticize the safe driver who elects to take a freeway rather than a surface



Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

street so he may exercise his election to drive at 65 m.p.h. This is a fit analogy here, where Mr. Gordon drove 65 m.p.h. in the sale of products expressly exempted by Regulation O and observed strict speed restrictions in offering services for free.

Plaintiff concedes that the Gordon Defendants structured the arrangement with distressed homeowners so that there were two programs with different terms. As set forth in the moving papers, a pre-litigation program was offered for fees, as defined by engagement agreements, and a pro bono (free) program was offered for loan modifications, as defined by separate engagement agreements. Plaintiff does not present any evidence to suggest or prove that any homeowner signed a contract to pay for loan modification services after the effective date of Regulation O. Misperceptions or after the fact misstatements by a **small minority** of disgruntled Plaintiff's witnesses does not change the character of what was offered.

Plaintiff asserts without proof that "no one received 'pro bono' loan modification services unless they had already paid thousands of dollars . . . ." [Opp, p. 5, lines 25-26.] In fact, Gordon "allowed distressed homeowners to participate in the pro bono modification program without signing up for the prelitigation products or services when their need justified inclusion." [Gordon Decl. Submitted In Opposition to Plaintiffs MSJ, p. 77, second box from the top.]

Plaintiff demonstrates its distain for the Gordon Defendants by quoting a portion of Mr. Gordon's testimony and labeling it a "scornful attitude." [Opp, p. 6, lines 18-26.] In fact, Mr. Gordon was colorfully illustrating the point that he assumed homeowners were interested enough to read the contracts and intelligent

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

enough to understand them or seek clarification from readily available computer searches. That confidence is well founded, as it is well settled that the consumers signing the agreements are deemed to have read and understood them. The Supreme Court made the following pronouncement in *Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L.Ed. 203 (1875):

> It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission

That remains the law. *See Burden v. Check Into Cash of Kentucky*, LLC, 267 F.3d 483 (6th Cir. 2001); *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1001 (9th Cir. 1984); *O'Neill v. N.A.S.D, Inc.*, 667 F.2d 804 (9th Cir 1982); *Employee Painters Trust v. J & B Finishes*, 77 F.3d 1188 (1996); *Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732 F.Supp.2d 952 (N.D. Cal. 2010); *American Home Assurance Co. v. Phineas Corp.*, 347 F. Supp.2d 1231 (M.D. Fla 2004); *Hall v. Burger King Corp.*, 912 F.Supp. 150 (S.D. Fla. 1995); *In re Hyun-Bok Chung*, 43 B.R. 368 (USBC Hawaii 1984).

### B. The Written Contracts Must Be Deemed To Supersede Contrary Representations Or Understandings

Plaintiff challenges 140 years of law with evidence that a small but vocal minority of clients did not understand what they read and that a marketing manager

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

thought the value offered was loan modification services. If some disgruntled homeowners did not take the time to read and understand the contracts they signed, then shame on them. If their recollection has been adjusted by anger at an unsatisfactory disposition or eagerness to collect restitution money they undoubtably anticipate of plaintiff prevails, then even more shame on them. Neither circumstance presents a basis to persecute Mr. Gordon.

Responsible professionals, including Mr. Gordon, do not leave the specifics of their deal terms to the vicissitudes of comprehension and recollection. The written agreements assured that the consumers knew (or would be deemed to know) precisely what they were getting in total, including what they were getting for a fee and what they were getting for free. The written agreements assured that any overstatements, misstatements, or other "puffing" made by Pessar's staff (including those approved by Mr. Gearries) were corrected before money was paid to and/or negotiated by any Gordon related entity. The written agreements assured that Gordon and the distressed homeowners he assisted would be protected from human error and greed that may be associated with Pessar's commission based sales force. The written agreements **should** have been sufficient to discourage Plaintiff from initiating and prosecuting the present action, which has destroyed Gordon's custom legal products business and his law firm and has rendered him indigent and homeless.

Plaintiff's reliance on the Federal Register is misplaced because its terms **actually support** the validity of the programs Defendants initiated. Upon the inception of the MARS regulations, Gordon's pay program started to sell custom

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

legal products for homeowners to use. The issue of products was addressed by the FTC as follows:

> One commenter recommended that the Commission add the word "product" to the proposed definition "mortgage assistance relief service." The commenter recommended this addition to ensure that providers cannot evade the Rule by claiming to sell a product (e.g., software, books, CDs, or other tangible materials to help consumers avoid foreclosure) rather than a service.

The qualified written request, demand letter, and draft complaint that Gordon sold all fit within the concern to make sure "that providers cannot evade the Rule by claiming to sell a product."

The FTC specifically addressed the issue of products as follows:

> The Commission declines to include products in the definition of MARS in the Final Rule. The record demonstrates that providers of services to help consumers modify their mortgages and avoid foreclosure often engage in unfair and deceptive practices; in contrast, neither the Commission's law enforcement experience nor the rulemaking record show that those who sell products for mortgage assistance relief are engaged in the same types of conduct.

75 Fed.Reg 75092-01 at 75102 (December 2010).

**Despite** the FTC's clear and unambiguous refusal to include products in scope of the MARS regulations, even at the risk of allowing providers to "evade the Rule by claiming to sell a product," the CFPB is prosecuting Gordon for selling products. Because the FTC **does not include** products as covered by Regulation O, the CFPB should not be allowed to proceed against Gordon for selling his custom legal products.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

### C. The Written Contracts Define The Deals

The written agreements between the Gordon Defendants and their customers **defined the deal** between those parties. The deal was that distressed homeowners paid for certain products that were not covered by Regulation O and the same or different distress homeowners received loan modification services **for no consideration.** As set forth in the moving papers, the sanctity of the deal between the parties is protected by the doctrines of estoppel by contract and the parol evidence rule. Neither Plaintiff nor this Court has the legal authority to restructure the agreed upon deal between the parties so lawful programs are recast so they are illegal.

Plaintiff, a self professed law enforcement agency, seeks to defeat summary judgment with an implied plea to this Court to disregard the deal terns that Mr. Gordon carefully crafted to be lawful and rewrite the terms of Mr. Gordon's relationship with his customers to make it unlawful. That level of activism by a law enforcement agency and/or a court is unprecedented and not supported by any cited decisional authority. That also runs contrary to the **conclusive presumption** that facts contained in the contract are true. *See* California Evidence Code § 622; *Plaza Freeway Ltd. Partnership v. First Mountain Bank,* 81 Cal.App.4th 616 (2000); *In re Marriage of Brooks*, 169 Cal.App.4th 176, 184 (2009); *In re Estate of Wilson*, 64 Cal.App.3d 786, 801 (1977). Thus, no one who signed the Gordon Defendants' agreements should be heard when they try to assert they paid for loan modification services. It is conclusively presumed that they did not.

Plaintiff overstates the significance of decisional authorities that permit a law enforcement agency to disregard disclaimers, releases and settlement

agreements. There is nothing noval or remarkable about the proposition that private parties may not contract to obstruct law enforcement. That is a far cry from what Plaintiff is attempting to do, e.g., totally change the terms of lawful deals and transform them into illegal activities.

Plaintiff similarly overstates the significance of *Wang v. Massey Chevrolet*, 97 Cal.App.4th 856 (2002). The *Wang* court also stands for a proposition that is neither novel nor remarkable, namely that a state legislative body may pass a consumer protection statute that is not affected by that state's parol evidence rule so that misrepresentations leading up to the execution of a contract actionable notwithstanding the contract. Plaintiff here presents no such authority with respect to Regulation O. Moreover, the *Wang* court does not authorize any law enforcement agency to create unlawful conduct by rewriting contracts.

In fact, the contrary seems to be the case, as Regulation O expressly limits its coverage to instances where consideration is paid for mortgage relief services. This does not authorize the CFPB or this Court to disregard fully integrated agreements that say mortgage relief services are provided for free and products are sold for a cost. This does not authorize the CFPB or this Court to change the terms of lawful deals to manufacture illegality.

Plaintiff concludes its Regulation O argument with a series of cases that may be best described as near misses. The issue in the instant cases is whether money was paid for products (as agreed by the seller and all buyers) or whether money

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

was paid for loan modification services (which all parties agreed, in writing, were provided for free). None of the cases Plaintiff cites addresses that issue.[5]

Plaintiff's reliance on *FTC v. Minuteman Press*, 53 F.Supp.2d 248 (E.D. N.Y. 1998) is also misplaced. The *Minuteman Press* court merely held that terms in a written contract are not fatal to the reliance element of an enforcement action in the same way they would preclude a private fraud claim. The court endorsed a "common sense net impression" standard. *Id.* at 262-63. The Regulation O issue is the nature of the deal between Gordon and his clients; it **is not** whether there was reasonable reliance on pre-contract representations. The *Minuteman Press* holding does not authorize the CFPB or this Court to rewrite contracts for lawful deals and use executive or judicial *fiat* to transform them into illegal schemes.

Similarly, *FTC v. Cyberspace.com LLC*, 2002 WL 32060289 (W.D. Wash. 2002), *aff'd*, 453 F.3d 1196 (9th Cir. 2006) does not help Plaintiff here. That case stands for the unremarkable position that inconspicuous, fine print disclosures do not vitiate the misleading or deceptive nature of a solicitation because consumers were unlikely to read the fine print. *Cyberspace.com LLC*, 453 F.3d at 1200. The scope of work in the agreements for paid products was in the same pitch as the rest of the contract, so there is no "fine print" issue. Similarly, the contract terms in the pro bono agreement used the same pitch throughout the contract, even where it describes the services provided for free.

---

[5] Curiously, Plaintiff argues that the *Minuteman Press* case "distinguished the lead case relied upon by the defendants. *Carlock v. Pillsbury Co.*, 719 F.Supp. 791, 829 (D. Minn. 1989). This argument is bizarre, as the Gordon Defendants never mention the *Carlock* case.

### D. Partial Summary Judgment Is Proper On The Regulation O Counts

There are no material factual disputes about the nature of Defendants' program. Starting October of 2009, Gordon's approach to lender issues has involved two independent approaches, a pre-litigation investigation approach and a pro bono loan modification approach. [Gordon Decl. (5/20/13) ¶ 3.]

- The first approach was research, investigation and analysis of whether the lender engaged in any deceptive, unlawful, or fraudulent practices. [Gordon Decl. (5/20/13) ¶ 4.] The Pre-Litigation Program was established immediately after the implementation of the MARS laws. No products, as described in the agreement were provided for any customer who did not sign the agreement. This pay program involved a demand letter, qualified written request, and draft lawsuit customized for each customer. The goal remained ascertaining whether there were grounds for a lawsuit to obtain damages. [Gordon Decl. (5/20/13) ¶ 4.3.]

- The second approach was a pro bono loan modification program. [Gordon Decl. (5/20/13) ¶¶ 5-7.] The assistance for the specifically defined loan modification services was provided **for no consideration.** No cost that arose from this service was ever passed on to any homeowner. [Gordon Decl. (5/20/13) ¶ 7.]

The anecdotal evidence that some distressed homeowners and some marketing personnel either did not read or did not understand the nature of the two programs or the scope of consideration set forth in each of the two agreements does not create a "genuine dispute as to any material fact." The Gordon Defendants and this Court have the express language of fully integrated contracts to rely upon, and the deals described in those contracts prove the Gordon

Defendants' business practices were not covered by Regulation O. Accordingly, summary judgment should be granted for the Gordon Defendants and against the DFPB on Counts IV to VIII of the complaint in this action.

## IV. Conclusion

The essential facts are not in dispute. The instant action represents an unlawful exercise of governmental power that is contrary to Constitutional, statutory and regulatory limitations. Beyond that, Plaintiff seeks to apply the limitations of Regulation O to programs carefully crafted to be excluded from its coverage. Summary Judgment is appropriate on the first argument. If this Court gets beyond that argument, at a minimum partial summary judgment is appropriate on the Regulation O Counts.

Respectfully presented,
**LAW OFFICE OF GARY KURTZ**
A Professional Law Corporation

Dated: June 10, 2013

By: ______________________________
Gary Kurtz, Esq. Attorney for Defendants Chance E. Gordon and The Gordon Law Firm, P.C.

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

Law Office of Gary Kurtz, A P.L.C.
20335 Ventura Boulevard, Suite 200
Woodland Hills, California 91364

**Certification**

I hereby certify that, on June 10, 2013, a copy of the foregoing GORDON DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES OR CLAIMS was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

Dated: July 10, 2013

Gary Kurtz